IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | : : : |
| Plaintiffs, | : : |
| v. | : C.A. No. 15-980-LPS-CJB : |
| COOK GROUP INCORPORATED and COOK MEDICAL LLC, | : : : |
| Defendants. | : : |

**MEMORANDUM ORDER**

WHEREAS, Magistrate Judge Burke issued a Report and Recommendation (D.I. 80) on December 22, 2016, recommending that the Court adopt certain claim constructions for disputed terms in U.S. Patent Nos. 8,685,048; 8,709,027; 8,974,371; and 9,271,731;

WHEREAS, on January 19, 2017, Defendants Cook Group Incorporated and Cook Medical LLC (collectively, "Cook"), objected to the Report (D.I. 95), and specifically objected to the recommended constructions of the terms "control element including a connector element," "frangible link," "an opening formed in a proximal end thereof" / "an opening at a proximal end of the capsule," "contacting the inner surfaces" / "to contact the first and second inner surface," and "engaging inner walls";

WHEREAS, on February 2, 2017, Plaintiffs Boston Scientific Corporation and Boston Scientific SciMed, Inc. (collectively, "Boston Scientific") responded to Cook's objections (D.I. 106);

WHEREAS, on April 24, 2017, the Court granted Cook's motion for leave to supplement

1

the record on claim construction (D.I. 207; *see also* D.I. 214) and has considered the additional evidence and argument presented by the parties (D.I. 180 Ex. A-C, 216, 217);

WHEREAS, Magistrate Judge Burke issued a second Report and Recommendation (D.I. 193) on April 12, 2017, recommending that the Court adopt certain claim constructions for disputed terms relating to means-plus-function claiming in the patents-in-suit;

WHEREAS, on May 1, 2017, Cook objected to the second Report (D.I. 221), specifically the construction of the term "opening element;"

WHEREAS, on May 15, 2017, Boston Scientific responded to Cook's objection (D.I. 242);

WHEREAS, the Court has considered the parties' claim construction disputes addressed by the Reports *de novo*, *see St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691 F. Supp. 2d 538, 541-42 (D. Del. 2010); 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3);

NOW THEREFORE, IT IS HEREBY ORDERED that:

1. Cook's objections (D.I. 95) to Judge Burke's constructions of "control element including a connector element," "frangible link," "an opening formed in a proximal end thereof" / "an opening at a proximal end of the capsule," "contacting the inner surfaces" / "to contact the first and second inner surface," and "engaging inner walls" are OVERRULED and the constructions set forth in Judge Burke's Report are ADOPTED.

2. Cook's objection (D.I. 221) to Judge Burke's construction of "opening element" is OVERRULED and the construction set forth in Judge Burke's Report is ADOPTED.

3. Cook objects to the construction of "a control element including a connector

2

element,"[1] which Judge Burke recommended giving its plain and ordinary meaning. (D.I. 80 at 7-14) The parties' dispute centers on the meaning of "including," which Cook contends should require the control element and connector element to be part of a single, unitary structure. The Report rejected Cook's view, reasoning that "'including' is "a commonly understood word that does not, in and of itself, *require* a single or unitary structure" and that the specification and prosecution history do not support finding a disclaimer. (*Id.* at 7-8)

In particular, the Report identified portions of the specification suggesting that the yoke – a component that is not part of a unitary, single structure with the control wire – may constitute part of the connector element.[2] (*Id.* at 9) In its objection, Cook raises new, extrinsic evidence that it contends shows that the yoke cannot be part of the connector element. (D.I. 216 at 2-3) This evidence – premarket notifications submitted to the FDA – describes the yoke as being part of the "clip." (D.I. 180 Ex. A at 9, Ex. B at 10) But it also describes the role of the yoke as "a *connection* point between the clip and delivery system" (D.I. 180 Ex. A at 9, Ex. B at 11) (emphasis added), which is the role of the connector element in the claimed invention; the control element is "removably connected to the clip assembly via the connector element," '371 patent col. 18 ll. 10-15. Thus, the Court is not persuaded that Cook's additional evidence is inconsistent with the Report's understanding of the patent or compels adoption of Cook's

---

[1]This term appears in claim 11 of the '371 patent.

[2]Cook contends that treating the yoke as a connector element is inconsistent with prosecution history related to a prior art reference, Adams. (D.I. 95 at 5) But, as the Report pointed out, there are relevant design differences between the "yoke" described in Adams and that of the '371 patent. (D.I. 80 at 20 n.8) Thus, the prosecution history that distinguished Adams does not clearly disclaim an embodiment in which the yoke constitutes part of the connector element.

3

proposed construction.

But even assuming that the connector element is only the "ball connector" described in the patent – and, therefore, does not include the yoke – the Report correctly determined that "the specification does not clearly preclude an embodiment in which the connector element and the remainder of the control element are 'structures that are separate but still connected together.'" (D.I. 80 at 10) Further, the Report fully considered the prosecution history and concluded that the patentee did not "clearly communicate that a control element must be a single, unitary structure." (*Id.* at 13) Cook contends that, contrary to the Report's finding, the prosecution history clearly conveys that the control element does not encompass multi-component structures. (D.I. 95 at 2) The Court disagrees. The statements in the prosecution history appear to distinguish the claimed invention from the prior art on the basis of the location of the frangible link in relation to the control element and connector element. (*See* D.I. 54 Ex. J at 27, 38) These statements do not clearly limit the control element to a single, unitary structure.

4. Cook objects to the recommended construction of "frangible link"[3] as "a link between at least two components that become unlinked when a tensile load is applied." (D.I. 80 at 14-21) Although Cook initially argued that the "frangible link" terms of the '371 and '027 patents "share[] a common meaning" (D.I. 56 at 27), Cook now objects to the Report's construction only with respect to the '371 patent, contending now that the term should be given different meanings in the two patents. Nonetheless, considering the '371 patent alone,[4] the Court

---

[3]This term appears in claim 4 of the '027 patent and claims 5 and 11 of the '371 patent.

[4]Accordingly, the Court does not rely on the j-hook embodiment of the '027 patent in deciding to adopt the Report's claim construction. (*See* D.I. 80 at 17-18)

4

agrees with the Report's recommended construction.

Cook contends that a "frangible link" is a "a breakable, fragile, or brittle portion of a single, unitary structure designed to fracture into separate pieces." (D.I. 56 at 27) Cook first points to claim language, arguing that "frangible" describes a more specific type of connection than other words used by the claims – releasable and removable – to describe the link. While it may be true that the other claim language describes a link that is different from a frangible one, that other claim language does not dictate that a frangible link must be one that fractures a single, unitary structure. Additionally, although the specification does, at points, describe the frangible link as fracturing, *see, e.g.*, '371 patent col. 12 ll. 43-44, the Court is not persuaded that it is appropriate to limit the "frangible link" to this preferred embodiment, *see Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346-47 (Fed. Cir. 2015), especially in light of other passages of the '371 patent that describe the frangible link more broadly, *see* col. 15 l. 64 - col. 16 l. 3. The Court also agrees with the Report's assessment that the prosecution history does not disclaim Boston Scientific's proposed construction, as that history distinguishes the claimed invention on the basis that the control element and connector element of the prior art remained attached, indicating that there was no frangible link connecting those elements.[5] (D.I. 80 at 19-20)

5. Cook objects to Judge Burke's recommendation that "an opening formed in a

---

[5]Nor does the prosecution history of European Patent Application No. 1,328,199, which shares a specification with the *'027* patent, persuade the Court to adopt Cook's narrow construction for the *'371* patent. (*See* D.I. 216 at 4) While this evidence may support Cook's contention that the '027 and '371 patents should not automatically be given identical constructions, it does not justify imposing limitations that are not supported by the intrinsic record of the '371 patent, such as requiring the frangible link to be within a single, unitary structure.

5

proximal end thereof" / "an opening at a proximal end of the capsule"[6] be given its plain and ordinary meaning. (D.I. 80 at 21-24) Cook contends that these terms require the opening to be in the sidewall of the capsule. The Report found that, although there are disclosed embodiments having the opening in the sidewall, Figures 9-11 of the '371 patent depict an embodiment without holes in the sidewall. (*Id.* at 23-24) Cook disputes that these are different embodiments, instead suggesting that Figures 9-11 describe the same embodiment as is shown in Figures 14 and 21, which does have openings in the sidewall. But the Court agrees with Judge Burke's understanding of the specification. In particular, Figure 9 and Figure 14 have different numbers labeling parts of the capsule, indicating that those figures depict different embodiments. Further, even if the Court were to agree with Cook that Figures 9-11 are illustrations of an embodiment with the opening in the sidewall, Cook does not offer any persuasive reason as to why it would be appropriate to depart from the ordinary meaning of "end" and limit the claimed invention to embodiments having holes only in a specific location of the end, i.e., the sidewall. (*Id.* at 22-23)

6. Cook objects to Judge Burke's construction of "contacting the inner surfaces"[7] / "to contact the first and second inner surface"[8] and "engaging inner walls."[9] Judge Burke recommended that these terms be afforded their plain and ordinary meaning. (D.I. 80 at 28-31) The Court agrees that "contacting" and "engaging" are commonly-understood words that do not necessarily require more than touching and that nothing in the intrinsic record demands a more

---

[6]These terms appear, respectively, in claims 1 and 15 of the '371 patent.

[7]This term appears in claims 1, 3-11, 13-15, and 17-19 of the '027 patent.

[8]This term appears in claim 20 of the '027 patent.

[9]This term appears in claims 1 and 12 of the '731 patent.

6

restrictive meaning. (*Id.*) The Court is not persuaded that adopting the plain and ordinary meaning of these terms leaves unresolved any genuine, material dispute about the meaning of the terms. (*See* D.I. 95 at 10) Rather, the constructions reject Cook's position that contacting or engaging *requires* a physical connection beyond simply touching.

7. Cook objects to Judge Burke's recommendation that "opening element"[10] be given its plain and ordinary meaning. (D.I. 221 at 1) Cook contends that "opening element" is a means-plus-function term, and suggests that the Report erred in finding that Cook has not overcome the presumption that "opening element" is not a means-plus-function term, and further erred in considering other claim language and the specification when determining that "opening element" connotes sufficient structure. (*Id.* at 4-8; *see* D.I. 193 at 18-22) The Court disagrees with Cook. As the Report indicated, when a claim term does not use the word "means," a challenger may overcome the presumption that § 112, ¶ 6 does not apply by showing that "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Williamson,* 792 F.3d at 1348 (internal quotation marks and alteration omitted). In analyzing whether § 112, ¶ 6 applies, "it is proper to consult the intrinsic record." *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1357 (Fed. Cir. 2011), *overruled on other grounds by Williamson*, 792 F.3d 1339. Here, the Court rejects Cook's contention that the use of the word "element" conclusively establishes that the term uses means-plus-function claiming. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299-1300 (Fed. Cir. 2014), *overruled on other grounds by Williamson*, 792 F.3d 1339. Rather, when considered in context of other claim language, which describes how the opening element

---

[10]This term appears in claims 1, 2, 12, 13, and 20 of the '731 patent.

7

structurally relates to other portions of the claimed device, and figures in the specification, the Court agrees with Judge Burke that the term provides sufficiently definite structure. *See Williamson*, 792 F.3d at 1350-51; *Sci. Telecomms., LLC v. Adtran, Inc.*, 2016 WL 6872311, at *5 n.38 (D. Del. Nov. 21, 2016). Therefore, the Court determines that Cook has not carried its burden to overcome the presumption that § 112, ¶ 6 is not invoked here.

8. Given the detailed reasoning provided in the Reports, the Court finds it unnecessary to address Cook's objections any further.

September 11, 2017
Wilmington, Delaware

HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE