# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 15-980-LPS-CJB |
| | : | |
| COOK GROUP INCORPORATED and COOK MEDICAL LLC, | : | |
| | : | |
| Defendants. | : | |

Karen L. Pascale and Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR, Wilmington, DE

Matthew M. Wolf, Edward Han, Marc A. Cohn, Amy DeWitt, Nicholas Nyemah, Patrick Reidy, and Tara Williamson, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC

Assad H. Rajani, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, CA

Ryan Nishimoto and Marty Koresawa, ARNOLD & PORTER KAY SCHOLER LLP, Los Angeles, CA

Attorneys for Plaintiffs.

David E. Moore, Bindu A. Palapura, and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Dominic P. Zanfardino, Bradley G. Lane, Jeff Nichols, Jason W. Schigelone, James M. Oehler, Andrew S. McElligott, David L. Bernard, and Andrea L. Shoffstall, BRINKS GILSON & LIONE, Chicago, IL

Attorneys for Defendants.

## OPINION

September 11, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Presently before the Court is Defendants Cook Group Incorporated ("CGI") and Cook Medical LLC's ("Cook Medical") (collectively, "Defendants" or "Cook") motion to dismiss for improper venue or, alternatively, to transfer venue in light of the Supreme Court's decision in *TC Heartland LLC v. Kraft Food Group Brands LLC*, 137 S. Ct. 1514 (2017). (D.I. 282)

It is undisputed that after *TC Heartland*, which held that a corporate defendant "resides" only in its state of incorporation for purposes of determining where venue is proper in a patent case, *see* 28 U.S.C. § 1400(b), Defendants, who are not Delaware corporations, can no longer be said to "reside" in Delaware. *TC Heartland* did not, however, address the second prong of § 1400(b), which makes venue proper in a district "where the defendant has committed acts of infringement and has a regular and established place of business."

After reviewing thorough briefing and hearing oral argument, the Court finds that Defendants do not have a "regular and established place of business" in Delaware. Therefore, the Court concludes that venue is improper in Delaware for this action. Accordingly, the Court will grant Defendants' motion and transfer this case to the United States District Court for the Southern District of Indiana, Indianapolis Division.

## I.      BACKGROUND

This is a patent infringement action brought by Plaintiffs Boston Scientific Corporation ("BSC") and Boston Scientific SciMed, Inc. ("BSSI") (collectively, "Plaintiffs" or "Boston Scientific"), alleging that Defendants infringe U.S. Patent Nos. 8,685,048; 8,709,027; 8,974,371; and 9,271,731, which generally describe and claim a hemostatic clip apparatus and methods for using such clip, for example, to stop gastrointestinal bleeding. (D.I. 19 at ¶¶ 1, 10)

1

BSC is a Delaware corporation with its principal place of business in Marlborough, Massachusetts. (D.I. 19 at ¶ 2) It develops, manufactures, and supplies medical devices, including endoscopic products for the treatment of diseases of the digestive system, such as its Resolution™ Clip. (*Id.* at ¶¶ 2, 10) BSSI is a Minnesota corporation with its principal place of business in Maple Grove, Minnesota. (*Id.* at ¶ 3) A wholly-owned subsidiary of BSC, BSSI develops and manufactures endoscopic products, including hemostatic clips distributed by BSC. (*Id.*) BSSI is the owner by assignment of the patents-in-suit. (*Id.*)

CGI is an Indiana corporation with its principal place of business in Bloomington, Indiana. (*Id.* at ¶ 4) It is alleged to be a major competitor of Plaintiffs in the endoscopic hemostatic clip market. (*Id.* at ¶ 15) Cook Medical is an Indiana limited liability company that also has its principal place of business in Bloomington. (*Id.* at ¶ 5) It, too, is alleged to be a major competitor of Plaintiffs in the endoscopic hemostatic clip market, and it has sold the Instinct™ Endoscopic Hemoclip since at least 2013. (*Id.* at ¶ 15; D.I. 52 at 4)

Plaintiffs initiated this action on October 27, 2015, alleging that Defendants infringed three of the patents-in-suit. (D.I. 1) On March 9, 2016, Plaintiffs filed an amended and supplemental complaint for infringement as to all four patents. (D.I. 19) On July 15, 2016, Defendants filed an amended answer and counterclaims seeking declaratory judgment of non-infringement and invalidity of each of the asserted patents. (D.I. 52 at 15-17) Then, on December 19, 2016, Defendants filed a motion to stay pending *inter partes* reviews ("IPR"). (D.I. 74) That motion was initially denied without prejudice to renew at a time after the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") decided whether to institute review on the IPR petitions at issue. After the PTAB's institution of IPR proceedings

on many of the asserted claims, Defendants renewed their motion to stay on May 22, 2017. (D.I. 254) On August 16, 2017, the Court granted the motion to stay but excluded from the stay, *inter alia*, any efforts necessary for resolution of the instant motion. (D.I. 304 at 22)

In the meantime, on April 28, 2017, Defendants filed a motion for leave to file an amended pleading, seeking to add a defense and counterclaim of inequitable conduct. (D.I. 218) After that motion was denied without prejudice on June 2, 2017 (D.I. 268), Defendants filed a renewed motion for leave to file an amended pleading on June 9, 2017 (D.I. 274). In addition to the inequitable conduct defense and counterclaim, this latest proposed amended pleading seeks to plead improper venue in light of the Supreme Court's decision in *TC Heartland*, which was issued on May 22, 2017. (*Id.*)[1]

Defendants filed their improper venue motion on June 22, 2017, seeking dismissal or, in the alternative, transfer of this action to the Southern District of Indiana, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406. (D.I. 282) They contend that venue is not proper under either prong of § 1400(b). (*Id.*) Briefing on the motion was initially complete as of July 27, 2017 (*see* D.I. 283, 296, 298), although supplemental submissions have been filed (D.I. 307, 310, 312). The Court heard oral argument on August 24, 2017. (*See* Transcript ("Tr."))[2]

---

[1]On June 28, 2017, the Court granted-in-part Defendants' motion for leave to file an amended pleading, allowing for the inclusion of the inequitable conduct defense and counterclaim. The motion to amend remains pending as to the improper venue defense. In light of the Court's decision on Defendants' motion to dismiss or transfer, the remaining portion of their motion to amend will be denied as moot.

[2]At the motions hearing, both Chief Judge Stark and Magistrate Judge Burke presided. The hearing concerned not just the motion pending in the instant case, but also similar post-*TC Heartland* venue motions pending in other cases. (*See* D.I. 300) These motions had previously been referred to Judge Burke. (*See, e.g.*, D.I. 6) Although the referral has now been withdrawn, Judge Stark has been tremendously assisted by Judge Burke in considering the pending motion.

## II.    LEGAL STANDARDS

Generally, "venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate or convenient federal forum." *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710 (1972). Rule 12(b)(3) authorizes a party to move to dismiss a lawsuit for improper venue. When such a motion is filed, the Court must determine whether venue is proper in accordance with the applicable statutes. *See Albright v. W.L. Gore & Assocs., Inc.*, 2002 WL 1765340, at *3 (D. Del. July 31, 2002). Venue in a patent infringement action is governed solely and exclusively by the patent venue statute, 28 U.S.C. § 1400(b). *See TC Heartland*, 137 S. Ct. at 1516. The general venue statute, 28 U.S.C. § 1391(c), does not have any application in a patent case. *See id.* at 1521.

If the Court grants a Rule 12(b)(3) motion based on improper venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[3]

Generally, "it is not necessary for the plaintiff to include allegations in his complaint showing that venue is proper." *Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86-87 (3d Cir. 2011). Hence, when confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint. *See* 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017). The Court will accept any venue-related allegations in the complaint as true, unless those allegations are contradicted by the defendant's affidavits. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d

---

[3]As already noted, Defendants' improper venue motion seeks dismissal or, in the alternative, transfer. Both forms of relief are authorized by § 1406(a). Throughout this Opinion, the Court refers to Defendants' motion as a "motion to dismiss," but this is merely a shorthand.

4

Cir. 2012); *In re First Solar, Inc. Derivative Litig.*, 2013 WL 817132, at \*2 (D. Del. Mar. 4, 2013). In addition, the Court may consider affidavits submitted by the plaintiff. *See Bockman*, 459 F. App'x at 161 (affirming District Court's dismissal of complaint "because Defendants satisfied their burden of showing improper venue by offering evidence that the wrongful acts alleged in the Complaint did not occur in Pennsylvania, and Plaintiffs failed to rebut that evidence").

Courts are not uniform in their views as to which party bears the burden of proof with respect to venue. Some hold that a plaintiff must prove that venue is proper in its chosen district, while others hold instead that a defendant must prove that such district is an improper venue. *See* 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017) ("There are many cases – predominantly, but not exclusively, from the Third and Fifth Circuits – holding that the burden is on the objecting defendant to establish that venue is improper, because venue rules are for the convenience and benefit of the defendant."). At present, it appears the majority view is that "when the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue." *Id.* Notably, however, the Court of Appeals for the Third Circuit – the Circuit in which this District is located – has expressly held that the moving party has the burden of proving that venue is improper. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) ("[O]n a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it."); *see also Great W. Mining*, 434 F. App'x at 87 ("Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains – at all times – with the defendant.").

While the parties here are in agreement as to what the Third Circuit has held with respect

5

to the burden on venue motions, they disagree as to whether Third Circuit law governs the pending motion. Plaintiffs contend that Third Circuit law applies, while Defendants insist that, rather, the Court must apply the law of the Court of Appeals for the Federal Circuit. Notably, however, Defendants concede that there is no Federal Circuit precedent as to either (i) whether Federal Circuit law controls a motion to dismiss for improper venue, or (ii) which party bears the burden of proof on such a motion.

Defendants do cite to *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408 (Fed. Cir. 1996), which observed that "[v]enue is based on the facts alleged in the well-pleaded complaint," *id.* at 1410 (citing *Dody v. Brown*, 659 F. Supp. 541, 544 n.2 (W.D. Mo. 1987); *McGhan v. F.C. Hayer Co.*, 84 F. Supp. 540, 541 (D. Minn. 1949)). But *Hoover* does not purport to answer the questions this Court faces now. In *Hoover*, the Federal Circuit did not make clear whether it was applying Federal Circuit law or regional-circuit law.[4] Nor did *Hoover* make any statement as to which party bears the burden of proof on venue issues. Thus, there appears to be no binding Federal Circuit decision on these points.

The Federal Circuit, when reviewing a district court's decision, applies the law of the regional circuit where that district court sits for non-patent issues but applies its own law for issues of substantive patent law. *See In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290 (Fed. Cir. 2016). Thus, to determine whether Federal Circuit law controls which party has the burden here, the Court must examine whether the issue is one that is unique to patent law.

Procedural matters generally are not considered to be unique to patent law. *See Versata*

---

[4]*Hoover*'s citations to non-patent, district court opinions in the Eighth Circuit suggests that the Federal Circuit was applying regional-circuit law. *See* 84 F.3d at 1409-10 (noting appeal was from decisions of United States District Court for District of Nebraska).

*Software, Inc. v. Callidus Software, Inc.*, 780 F.3d 1134, 1136 (Fed. Cir. 2015); *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 840 (Fed. Cir. 2009). Still, "a procedural issue that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive control by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (internal citations, alterations, and quotation marks omitted).

In the Court's view, the issue of which party bears the burden of proof on a venue challenge is a procedural, non-patent issue controlled by the law of the regional circuit. Such a challenge must comply with, and is brought pursuant to, the Federal Rules of Civil Procedure. By operation of the Federal Rules of Civil Procedure, the venue challenge must be brought in a responsive pleading or as a separate motion under Rule 12(b)(3) – and the burden-of-proof allocation is properly viewed as simply another procedural aspect of a venue dispute. A motion for improper venue under Rule 12(b)(3) is akin to other motions authorized by the Federal Rules of Civil Procedure, such as Rule 12(b)(6) motions to dismiss for failure to state a claim and motions for judgment as a matter of law. The procedural aspects of these types of motions are controlled by regional-circuit law. *See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) ("Because it raises a purely procedural issue, an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010) (reviewing "denial of post-trial motions for JMOL

7

and new trial under regional circuit law").

That venue motions are procedural – and therefore governed by the law of the regional circuit – is true even though the substantive questions at issue may be controlled exclusively by Federal Circuit law. *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (applying "regional circuit law to the review of motions to dismiss for failure to state a claim under Rule 12(b)(6)" on issue of whether Rule 12's plausibility standard had been met, even where motion to dismiss was based on purported failure of patentee to claim patent-eligible subject matter under 35 U.S.C. § 101). Hence, while the substance of a venue challenge in a patent case will turn on § 1400(b), subject matter that is controlled by Federal Circuit law, the Federal Rules – as opposed to a patent-unique statute – provide the procedural vehicle for such a challenge.[5] *Cf. Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604-05 (Fed. Cir. 2015) (applying Federal Circuit law to issues of finality because applicable statute, 28 U.S.C. § 1295(a)(1), is unique to patent law).

Accordingly, the Court will apply Third Circuit law to the procedural aspects of Defendants' improper venue motion, which places the burden on Defendants to prove improper venue. *See, e.g., Koninklijke Philips N.V. v. ASUSTeK Comput. Inc.*, 2017 WL 3055517, at *2

---

[5]This is not inconsistent with the Federal Circuit's application of its own law to issues of personal jurisdiction. *See Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016). The Federal Circuit has long considered personal jurisdiction to be an issue "intimately related to substantive patent law" because it "is a critical determinant of *whether* and in what forum a patentee can seek redress for infringement of its rights." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) (emphasis added). Venue, however, is not about "whether" a patentee can seek redress, only about "where." More importantly, *Acorda* and *Beverly Hills Fan* are considering whether Federal Circuit law controls the *substance* of a personal-jurisdiction inquiry, not the procedural vehicle (i.e., a motion under Rule 12(b)(2)) used to bring such a challenge.

(D. Del. July 19, 2017); *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp.

2d 320, 324 (D. Del. 2013). However, all issues of interpretation of § 1400(b), a patent-specific

statute, are controlled by Federal Circuit law. *See Midwest Indus.*, 175 F.3d at 1359; *see also* Tr.

at 16 (Defendants agreeing on this point); Tr. at 61 (Plaintiffs agreeing on this point).[6] Therefore,

the Court will look to Federal Circuit precedent to understand and apply the provisions of

§ 1400(b). *See In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

## III.   DISCUSSION

The patent venue statute, 28 U.S.C. § 1400(b), provides:

> Any civil action for patent infringement may be brought in
> the judicial district [1] where the defendant resides, or [2] [(a)]
> where the defendant has committed acts of infringement and [(b)]
> has a regular and established place of business.

It is undisputed that under the Supreme Court's decision in *TC Heartland*, venue in this case is

not proper in Delaware under the "resides" portion of the statute, as Defendants are incorporated

in Indiana. Defendants, therefore, each "reside" in Indiana, not Delaware.

The parties' disputes are, instead, threefold. First, they disagree as to whether Defendants

have waived their opportunity to challenge whether Delaware is a proper venue. Second,

assuming Defendants are permitted to press the improper venue issue, the parties disagree over

whether Defendants have a "regular and established place of business" in Delaware, which is part

of § 1400(b)'s second basis on which venue may be proper. Finally, the parties also dispute

---

[6]Because the motions hearing was consolidated with numerous other cases, the Court's
citation to the transcript of the hearing should not be taken to mean that counsel for the particular
Plaintiff or Defendant in the captioned case here expressly made this statement. Where the Court
has cited to "Plaintiff" or "Defendant" having said something at the hearing, it is with respect to
a point on which the particular party in the captioned case here has advocated the same position
or has otherwise endorsed the position being noted.

whether, should the Court be uncertain as to whether Defendants have a "regular and established place of business" here, the Court should or should not order "venue-related discovery." The Court will address each of these issues in turn.

### A. Waiver

#### 1. Analysis

Plaintiffs' main argument in opposition to the instant motion is that Defendants waived any challenge to venue by failing to object to venue in any of their pleadings and failing to otherwise assert improper venue for nearly two years after this case was filed, all while actively participating in the litigation (including through discovery, claim construction, and significant motions practice). (*See* D.I. 296 at 7-8) Defendants do not contest the relevant facts underlying Plaintiffs' argument, but instead argue that waiver is inapplicable here in light of the Supreme Court's recent decision in *TC Heartland*. (*See* D.I. 283 at 7-11; D.I. 298 at 3-8) In assessing the parties' competing positions, it is useful to first describe the history of the underlying legal issues driving the Court's analysis.

As noted above, in a patent infringement action, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In 1957, the Supreme Court held that § 1400(b) was "not to be supplemented by the provisions of 28 U.S.C. § 1391(c)," the general venue statute. *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957). As such, *Fourco* held that for the purposes of § 1400(b), a defendant "resides" in its state of incorporation only. *See id.* at 227-28.

Then, in 1988, Congress amended § 1391(c). In doing so, it added the language "[f]or

10

purposes of venue under this chapter" before the rest of § 1391(c)'s text. Thus, after the 1988 amendments, § 1391(c) read, in pertinent part:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Judicial Improvements and Access to Justice Act, § 1013(a), 102 Stat. 4669.

Subsequent to the 1988 amendments, the Federal Circuit was called upon to decide whether § 1400(b) remained the exclusive basis for determining a proper venue for a patent case involving a corporate defendant. In 1990, the Federal Circuit answered this question in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1579-84 (Fed. Cir. 1990), holding that in its amended form § 1391(c) governed the meaning of "resides" in § 1400(b). Consequently, the Federal Circuit held, § 1391(c) "redefines the meaning of the term 'resides'" in § 1400(b), *id.* at 1578, such that "venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced," *id.* at 1583.

Thereafter, in 2011, Congress once again amended § 1391. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, § 202, 125 Stat. 763. After the 2011 amendment, § 1391(a) provides that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." Section 1391(c)(2), in turn, now provides:

> For all venue purposes – an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question

11

and, if a plaintiff, only in the judicial district in which it maintains
its principal place of business.

For 27 years – between 1990 and 2017 – *VE Holding* governed venue in patent litigation.

Then, on May 22, 2017, the Supreme Court issued its opinion in *TC Heartland*, holding that,

notwithstanding the 1988 and 2011 amendments to § 1391(c), "a domestic corporation 'resides'

only in its State of incorporation for purposes of the patent venue statute," thereby reversing the

Federal Circuit's decision in *VE Holding*. 137 S. Ct. at 1517.

With this background in mind, the Court turns to the waiver issue.

Generally, a court presiding over a case in which venue is improper "shall dismiss, or if it

be in the interest of justice, transfer such case to any district or division in which it could have

been brought." 28 U.S.C. § 1406(a). However, a party may waive its right to challenge venue if

it "does not interpose timely and sufficient objection to the venue." *Id.* § 1406(b). Under

Federal Rule of Civil Procedure 12(h), a party waives a venue defense by "failing to either:

(i) make it by motion under this rule; or (ii) include it in a responsive pleading." Fed. R. Civ. P.

12(h)(1)(B); *see also Albright*, 2002 WL 1765340, at *3 ("The plain language of Rule 12(h) thus

makes clear that the improper venue defense is waived only when the defense is not asserted in a

Rule 12 motion to dismiss or a responsive pleading.").

"An exception to normal law of the case and waiver rules is recognized when an

intervening decision from a superior court changes the controlling law." *Beazer E., Inc. v. Mead

Corp.*, 525 F.3d 255, 263 (3d Cir. 2008) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d

162, 170 (3d Cir. 1982); *Zichy v. City of Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979)). This

intervening-law exception can apply "when 'there was strong precedent' prior to the change,

such that the failure to raise the issue was not unreasonable and the opposing party was not

12

prejudiced by the failure to raise the issue sooner." *Holland v. Big River Minerals Corp.*, 181

F.3d 597, 605-06 (4th Cir. 1999) (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 143 (1967)).

In these circumstances, "a party cannot be deemed to have waived objections or defenses which

were not known to be available at the time they could first have been made." *Holzsager v. Valley

Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981). Thus, if a motion "was almost certain to fail" before a

change in the law, that motion, brought after the change in the law, may be deemed – by

application of this exception – not to have been waived. *Chassen v. Fid. Nat'l Fin., Inc.*, 836

F.3d 291, 299 (3d Cir. 2016); *see also id.* at 293 ("Every circuit to have answered this question

has held that a litigant [need not] engage in futile gestures merely to avoid a claim of waiver.")

(internal quotation marks and brackets omitted).[7]

Here, there is no question that Defendants failed to raise the venue defense in a Rule 12

motion or responsive pleading. This triggers application of the waiver doctrine. The question

before the Court is whether the Supreme Court's decision in *TC Heartland* qualifies as an

intervening change in the controlling law, so as to create an exception to the rule of waiver.

A number of district courts have addressed this very question in the wake of *TC

Heartland*, and the majority have held that *TC Heartland* is not an intervening change of the law

but is, instead, merely a reaffirmation of *Fourco*. *See, e.g., Takeda Pharm. USA, Inc. v. Mylan

Pharm. Inc.*, 2017 WL 3326663, at *1 (D. Del. Aug. 3, 2017); *Koninklijke*, 2017 WL 3055517, at

*4 (noting that Court "joins in what appears to be a growing consensus that *TC Heartland* did not

---

[7]As a procedural, non-patent-unique issue, the Court is governed by Third Circuit law on
the question of determining whether a Supreme Court decision is an intervening change in the
law excusing waiver. The Court cites other Courts of Appeals decisions as persuasive additional
authority.

effect an intervening change in the law"); *Reebok Int'l Ltd. v. TRB Acquisitions LLC*, 2017 WL 3016034, at \*4 (D. Or. July 14, 2017); *Elbit Sys. Land v. Hughes Network Sys., LLC*, 2017 WL 2651618, at \*20 (E.D. Tex. June 20, 2017); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 WL 2556679, at \*3 (E.D. Va. June 7, 2017) ("The Supreme Court has never overruled *Fourco*, and the Federal Circuit cannot overrule binding Supreme Court precedent.").

On the other hand, a number of courts have reached the opposite conclusion, finding that *TC Heartland* does represent an intervening change in the law sufficient to qualify as an exception to the waiver doctrine. *See, e.g.*, *Simpson Performance Prods., Inc. v. NecksGen, Inc.*, 2017 WL 3616764, at \*4-5 (W.D.N.C. Aug. 23, 2017) ("In light of the fact that rulings of the Federal Circuit provide binding authority on all patent litigation in all federal district courts, on its face, *TC Heartland*'s rejection of *VE Holding* represents an intervening change in the law."); *Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*, 2017 WL 3479504, at \*3-4 (E.D. Tenn. Aug. 14, 2017) ("For 27 years, the Federal Circuit's interpretation of venue in patent cases has been prevailing and applied by this and countless other courts."); *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, 2017 WL 3381816, at \*3 (D. Minn. Aug. 4, 2017) ("[T]o hold that *Fourco* remained good law at all times over the last twenty-seven years . . . effectively ignores reality."); *OptoLum, Inc. v. Cree, Inc.*, 2017 WL 3130642, at \*3-4 (D. Ariz. July 24, 2017) ("*TC Heartland* changed the venue landscape just as *VE Holding* had done 27 years earlier."); *Westech Aerosol Corp. v. 3M Co.*, 2017 WL 2671297, at \*2 (W.D. Wash. June 21, 2017) (noting that *TC Heartland* represented a "sea change" in law of venue for patent cases).

On three occasions since *TC Heartland* was handed down, the Federal Circuit has declined to grant mandamus relief from district court judgments denying motions that sought to

14

transfer venue based on the law as expressed in *TC Heartland*. *See In re Nintendo of Am. Inc.*, 2017 U.S. App. LEXIS 14835, at \*3 (Fed. Cir. July 26, 2017); *In re Hughes Network Sys., LLC*, 2017 WL 3167522, at \*1 (Fed. Cir. July 24, 2017); *In re Sea Ray Boats, Inc.*, 2017 WL 2577399, at \*1 (Fed. Cir. June 9, 2017).[8] In these cases, the Federal Circuit did not decide whether *TC Heartland* effected a change in the law; it held only that the district courts had not committed a clear abuse of discretion in finding that the respective defendants had waived their right to move for relief due to improper venue.[9] *See, e.g., Nintendo*, 2017 U.S. App. LEXIS 14835, at \*3 ("We need not decide whether the Supreme Court's decision in *TC Heartland* effected a change in the law, because even setting that question aside we conclude that the district court did not commit a clear abuse of discretion in denying Nintendo's motion to dismiss or transfer.").

Against this backdrop, the Court concludes that *TC Heartland* did effect an intervening change in the law, creating an exception to the general rule of waiver. The Court reaches this conclusion for two principal reasons.

First, while the result in *TC Heartland* was effectively to reaffirm the standard previously announced in *Fourco*, *TC Heartland* actually addressed a different question than that faced by the *Fourco* Court in 1957. Specifically, the "only question" the *TC Heartland* Court answered was "whether Congress changed § 1400(b)'s meaning when it amended § 1391," amendments that were adopted in 1988 and 2011, well after *Fourco*. 137 S. Ct. at 1520. This issue, while

---

[8]In *Sea Ray Boats*, Judge Newman would have granted some relief on the basis that "[t]here is little doubt that the [Supreme] Court's decision in *TC Heartland* . . . was a change in the law of venue." 2017 WL 2577399, at \*1 (Newman, J., dissenting). As of this writing, Judge Newman is the only Judge of the Federal Circuit to express a view on this issue.

[9]In all three of these decisions, in holding that the exceptional remedy of mandamus was unavailable, the Federal Circuit relied in part on the fact that the cases were very close to trial.

addressed by the Federal Circuit in *VE Holding* (and again in *In re TC Heartland LLC*, 821 F.3d 1338 (Fed. Cir. 2016), in denying a mandamus petition seeking to vacate this Court's denial of *TC Heartland*'s motion to dismiss or transfer for improper venue), had never before been considered by the Supreme Court. *See Cutsforth*, 2017 WL 3381816, at *3 ("The Supreme Court's holding [in *TC Heartland*] rested primarily on a consideration of the 1988 and 2011 amendments – considerations which by definition were beyond the purview of the *Fourco* holding [in 1957].").

Thus, in holding that the amendments to § 1391 did not change § 1400(b)'s meaning, the Supreme Court overruled *VE Holding*, "but it did not do so on the ground that *VE Holding* had improperly 'overruled' *Fourco*." *OptoLum*, 2017 WL 3130642, at *3. There is no hint in *TC Heartland* that the Supreme Court viewed the Federal Circuit as having acted *ultra vires* in *VE Holding*. Instead, the Supreme Court held – on the first occasion it chose to address the question – that the Federal Circuit had erred on an issue of statutory interpretation, i.e., whether the 1988 and 2011 amendments to § 1391(c) impacted § 1400(b). *Fourco* simply did not address, and could not have addressed, this question.

Second, as a practical matter, *VE Holding* – whether it was, at some level, a "right" or "wrong" decision – did control patent venue law for the 27 years leading up to *TC Heartland*. *See, e.g.*, *Maxchief*, 2017 WL 3479504, at *4; *Cutsforth*, 2017 WL 3381816, at *4. Before *TC Heartland*, a venue challenge based on the contention that *VE Holding* was not controlling law would have been an exercise in futility, as evidenced by this Court's own ruling in *TC Heartland*. *See Kraft Foods Grp. Brands LLC v. TC Heartland LLC*, 2015 WL 4778828, at *10 (D. Del. Aug. 13, 2015) ("Ultimately, it is clear that Section 1391(c) continues to operate to define

16

'resides' in Section 1400(b), as was set out in *VE Holding*."), *adopted by* 2015 WL 5613160 (D.

Del. Sept. 24, 2015). To penalize a defendant for failing to present (and incur the associated

expenses of) a motion or defense that the Court would have undoubtedly rejected would, in this

Court's view, be "inconsistent with both the language and spirit of the rules of procedure and not

otherwise in the interest of justice." *OptoLum*, 2017 WL 3130642, at *5 (citing *Westech*, 2017

WL 2671297, at *2); *see also Cutsforth*, 2017 WL 3381816, at *4 ("It is illogical and unfair to

argue that Defendants erred by not making an argument that both this Court and the parties knew

would have been rejected – just as it had consistently been rejected around the country for a

quarter of a century.").[10]

This is so even though it is technically *possible* that any defendant could have ultimately

prevailed at the Supreme Court, just as TC Heartland did. *See Chassen*, 836 F.3d at 299

("[F]utility does not mean something is absolutely impossible; nor does it mean something is

merely improbable."); *Holzsager*, 646 F.2d at 796 ("The clairvoyance demanded by plaintiff here

---

[10]In addition to the countless district court decisions applying *VE Holding*, "the Federal
Circuit affirm[ed] *VE Holding* multiple times, including after Congress again amended § 1391 in
2011, and [] the Supreme Court den[ied] certiorari on multiple writs seeking to challenge the *VE
Holding* decision." *Simpson*, 2017 WL 3616764, at *2 & n.1 (citing *In re TC Heartland LLC*,
821 F.3d at 1341-43; *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280
(Fed. Cir. 2005); *Delta Sys., Inc. v. Indak Mfg. Corp.*, 4 F. App'x 857, 859 (Fed. Cir. 2001); *In re
Mini Micro Stencil, Inc.*, 232 F.3d 905, 2000 WL 290354, at *1 (Fed. Cir. 2000) (unpublished);
*West v. Terry Bicycles, Inc.*, 230 F.3d 1382, 2000 WL 152805, at *3 (Fed. Cir. 2000)
(unpublished) (concluding that district court erred where it dismissed action based on improper
venue without applying § 1391(c)'s definition of residency to § 1400(b), as required by *VE
Holding*); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1577 n.1 (Fed. Cir.
1994); *SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 31 F.3d 1177, 1994 WL
374529, at *3 (Fed. Cir.) (unpublished), *cert. denied*, 513 U.S. 1052 (1994); *In re Traveler's
Club Luggage, Inc.*, 935 F.2d 279, 1991 WL 94423, at *1 (Fed. Cir. 1991) (unpublished);
*Century Wrecker Corp. v. Vulcan Equip. Co.*, 923 F.2d 870 (Fed. Cir. 1990) (unpublished), *cert.
denied*, 499 U.S. 962 (1991)).

17

of the [defendant] is inconsistent with the doctrine of waiver."); *Cutsforth*, 2017 WL 3381816, at *4 (noting that to accept contrary position "would mean that no party could *ever* rely on the argument that a defense was 'unavailable' because *all* precedent (even Supreme Court precedent) can theoretically be overturned on certiorari"). *TC Heartland* changed the venue landscape, and the Court will not require defendants to have foreseen this change in order to preserve a venue challenge.[11]

That *TC Heartland* represents an intervening change in the law, and therefore constitutes an exception to waiver, does not mean *per se* that nothing else a defendant has done, and nothing else about the status of a case, could *nonetheless* present a bar to that defendant prevailing on an improper venue motion. It may well be that in any particular case the Court, after excusing waiver based on *TC Heartland*, should next proceed by assessing whether, in any event, a defendant should not be permitted to press its effort to change venue. Prototypical examples of where the Court might reach such a conclusion include where a defendant raises venue for the first time on the eve of trial, or many months (or years) after *TC Heartland* was handed down, or where dismissal or transfer would unduly prejudice a plaintiff. *See generally Ironburg Inventions Ltd. v. Valve Corp.*, 2017 WL 3307657, at *3 (N.D. Ga. Aug. 3, 2017) (considering undue prejudice to plaintiff as factor in evaluating defendant's motion to transfer); *Hand Held*

---

[11]Nor does the Court require that Plaintiffs have foreseen this change in the law, as they clearly did not. Plaintiff's complaint cites solely to § 1391 as the statutory basis for venue being proper here, and not to § 1400(b). (*See* D.I. 19 at ¶ 9; *see also Simpson*, 2017 WL 3616764, at *6 ("Plaintiff's own Amended Complaint implicitly acknowledges that *VE Holding* provided binding precedent relative to venue in patent litigation as Plaintiff's allegation regarding venue specifically relies on 28 U.S.C. § 1391(c) to establish proper venue . . . .")) If, as Plaintiffs contend, Defendants' improper venue defense was "available" before the Supreme Court's ruling in *TC Heartland,* because *Fourco* has always been the controlling law, then it is difficult to discern the good faith basis for Plaintiffs having relied solely on § 1391 for venue.

18

*Prods., Inc. v. Code Corp.*, 2017 WL 3085859, at *3 (D.S.C. July 18, 2017) ("Of course, a litigant's reasonable but mistaken belief should waive a late challenge to venue if prejudice to the plaintiff would result."). Or a party may have taken affirmative steps in the litigation that should, in particular circumstances, be viewed as essentially estopping that party from prevailing on an improper waiver defense. *See generally Davis v. Smith*, 253 F.2d 286, 288 (3d Cir. 1958) (stating that party waives right to contest venue when it "performs some act which indicates to the court that [it] elects not to raise [its] privilege of venue"); *see also Indivior Inc. v. Mylan Tech.*, 2017 U.S. Dist. LEXIS 118610, at *2-3 (D. Del. July 28, 2017) (denying request to renew venue challenge that had initially been timely but was followed by defendant asking Court to refrain from ruling and then waiting "more than a year" to renew challenge). The Federal Circuit's denials of post-*TC Heartland* mandamus petitions provide support for undertaking, in appropriate cases, a separate estoppel-type analysis even after finding that, due to *TC Heartland*, an affirmative defense of improper venue was not waived. *See Nintendo*, 2017 U.S. App. LEXIS 14835, at *3-4 (finding it unnecessary to decide waiver because, even assuming there was none, Nintendo had filed its venue motion "less than three months before scheduled date of the trial," making transfer improper); *Hughes*, 2017 WL 3167522, at *1 (denying mandamus, "[w]ithout necessarily agreeing with the district court's conclusion that the Supreme Court's decision in TC Heartland did not effect a change in the law, . . . based largely on the fact that Hughes filed its motion only after the *TC Heartland* case was decided by the Supreme Court and less than two months before trial"); *Sea Ray Boats*, 2017 WL 2577399, at *1 (denying mandamus relief, where venue challenge came "on the eve of trial").

19

## 2. Application

Here, the circumstances demonstrate that Defendants should be permitted to press their venue challenge. Trial in this case is scheduled for March 12, 2018, more than six months from now (D.I. 17), and will likely be delayed in light of the stay the Court has imposed due to IPR proceedings that are not expected to be resolved until May 2018 (*see* D.I. 304 at 16). Defendants did not intentionally delay filing the instant motion; instead, it was filed (along with an opening brief) just one month after the Supreme Court decided *TC Heartland*.[12] Nor does the record reveal any basis to conclude that Plaintiffs will be unduly prejudiced by the Court addressing the merits of Defendants' improper waiver defense (nor by transferring venue). Finally, the Court does not deem it appropriate under the circumstances of this case to effectively hold against Defendants their active participation in the litigation – participation which was required by orders of this Court. *See generally Chassen*, 836 F.3d at 302 n.13 ("The length of the delay itself – if excused under the futility exception – is not relevant to our inquiry."). Under the circumstances here, the Court does not interpret Defendants' participation in the litigation as being tantamount to them consenting to venue in Delaware.

Thus, the Court will turn to the merits of Defendants' venue challenge.

## B. Regular and Established Place of Business

### 1. Analysis

Having determined that venue is improper under the first prong of § 1400(b), as Defendants do not "reside" in Delaware, the Court will address whether venue might be proper

---

[12]In addition, Defendants sought leave to amend their answer on June 9, less than three weeks after *TC Heartland* was decided. (*See* D.I. 279)

under the second prong of § 1400(b). This requires the Court to evaluate whether Defendants have a "regular and established place of business" in Delaware. Relatedly, the Court will also consider whether Plaintiffs should be permitted to take venue-related discovery in aid of determining whether Defendants have a "regular and established place of business" in Delaware.[13]

Because of the development of the case law surrounding the residency test of § 1400(b) under *VE Holding*, which held that venue was proper anywhere a defendant was subject to personal jurisdiction, few courts – until very recently – have had occasion to rely on the second prong of § 1400(b) and to address how to determine whether a defendant has a regular and established place of business. *See, e.g., Hemstreet v. Caere Corp.*, 1990 WL 77920, at *2 (N.D. Ill. June 6, 1990) (describing 14 relevant factors); *see also Braden Shielding Sys. v. Shielding Dynamics of Texas*, 812 F. Supp. 819, 822 n.3 (N.D. Ill. 1992); *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 964 (D. Mass. 1987). Now that *TC Heartland* has abrogated *VE Holding*, the issue of how to determine what is and is not a regular and established place of business is arising before courts with increased frequency. *See, e.g., Hand Held*, 2017 WL 3085859, at *4 (comparing facts to those of prior appellate court decisions); *Raytheon Co. v. Cray, Inc.*, 2017 WL 2813896,

_____

[13]The second prong of § 1400(b) also requires that a defendant have committed "acts of infringement" in the District. Here, it is undisputed that Cook Medical has sold and offered for sale its allegedly infringing products in Delaware. (*See, e.g.*, D.I. 283 at 6) CGI, however, "does not make, use, sell, offer to sell, or import medical devices, including the Accused Product." (D.I. 284 Ex. 1 at ¶ 3) Thus, with respect to CGI only, this apparent lack of in-District infringement, in Defendants' view, "provides a separate and independent reason for holding venue improper." (D.I. 283 at 5) As the Court has concluded that both Defendants have met their burden to show that venue is improper in Delaware because both Defendants lack a "regular and established place of business" here, it is unnecessary in this case to consider the "acts of infringement" requirement any further.

at \*10-14 (E.D. Tex. June 29, 2017) (analyzing prior precedent and deriving four-factor test).

The words of the statute, which must be the Court's starting point, provide clear guidance as to what is required: a (i) place of business that is (ii) regular and (iii) established. As the Supreme Court has held, "[t]he language of this special statute is clear and specific." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961). Further, "the Supreme Court has stated that the provisions of § 1400(b) are not to be liberally construed." *In re Cordis*, 769 F.2d 733, 736 (Fed. Cir. 1985); *see also Schnell*, 365 U.S. at 263 ("[F]or us to enlarge upon the mandate of the Congress as to venue in such patent actions would be an intrusion into the legislative field."). The Court is further assisted in understanding how to understand these requirements by the Federal Circuit's 1985 decision in *In re Cordis*, 769 F.2d at 733, which marks the most recent, precedential case applying the "regular and established place of business" prong of § 1400(b).[14]

In *Cordis*, a pacemaker business incorporated and having its principal place of business in Florida was sued in Minnesota for patent infringement. *See id.* at 734. After the District Court found that venue was proper in Minnesota, the accused infringer, Cordis, filed a petition for a writ of mandamus. The Federal Circuit denied the petition, finding that the District Court had not clearly abused its discretion in determining that Cordis' business activities in Minnesota amounted to it having a regular and established place of business there. *See id.* at 737.

Cordis employed in Minnesota two full-time sales representatives, who worked from

---

[14]As the Court will note, *Cordis* is a decision issued on a mandamus petition, on which the Court of Appeals applies a more deferential standard of review than on a direct appeal. *See, e.g., Cordis*, 769 F.2d at 737 ("[I]f a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus, even though on normal appeal, a court might find reversible error."). Still, the parties are in agreement that *Cordis* is the "best data point" this Court presently has (*see, e.g.*, Tr. at 10, 19, 60-61, 71) – and, notably, no precedential decision has been cited that is inconsistent with *Cordis*.

home offices where they maintained a stock of Cordis inventory. *See id.* at 735. Hospitals wanting to purchase Cordis pacemakers could contact these Minnesota sales representatives to obtain Cordis products. *See id.* The salespeople also acted as technical consultants and were present in the operating room during a significant number of implantation surgeries in Minnesota. *See id.* Cordis hired a secretarial service in Minnesota to answer a local phone number as "Cordis Corporation" and to receive mail in the business' name. *See id.* Cordis, however, was not registered to do business in Minnesota, did not have a bank account there, and did not own or lease any office, house, or other property in the state. *See id.*

In its mandamus petition, Cordis invoked its lack of a fixed physical location as dispositive of the question whether it had a regular and established place of business in Minnesota. *See id.* at 736. The Federal Circuit explicitly rejected this contention, holding that "in determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a ***permanent and continuous presence*** there and ***not*** . . . whether it has a ***fixed physical presence*** in the sense of a ***formal office or store***." *Id.* at 737 (emphasis added).

In reaching its decision that a "fixed physical presence in the sense of a formal office or store" is not required to satisfy § 1400(b), the Federal Circuit contrasted Cordis' circumstances with those involved in two appellate cases that predated the creation of the Federal Circuit. In *Phillips v. Baker*, 121 F.2d 752 (9th Cir. 1941), the Ninth Circuit affirmed a District Court's determination that venue was improper in the Northern District of California for a business with its only office in Florida. The defendants there were in the business of providing pre-cooling services to agricultural shippers, which involved installing the defendants' pre-cooling apparatus

23

in a customer's empty refrigerated railroad car, operating the apparatus as the car was loaded, removing the apparatus, and then moving the apparatus to the location of another customer. *See id.* at 754. The Ninth Circuit found that the defendants' business in the district was not permanent, as the defendants "merely conduct precooling operations in a box car temporarily standing at a railroad siding, which car is there one day and gone the next; [they] also move from place to place according to the locations of the various shippers." *Id.* at 756. In *Cordis*, 729 F.2d at 736-37, the Federal Circuit concluded that "[t]he facts in *Phillips* indicated that the company's presence within the district was merely temporary, and there was no way to contact its representatives except by communication with the home office in Florida," making the facts of *Phillips* "very different" from those of Cordis.

The other case considered in *Cordis* is *University of Illinois Foundation v. Channel Master Corp.*, 382 F.2d 514 (7th Cir. 1967). There the defendant, Channel Master, was a New York corporation, with a manufacturing plant and headquarters in Ellenville, New York; it was sued for patent infringement in the Northern District of Illinois. *See id.* at 515. Channel Master had a single sales employee who lived in Illinois, who promoted the sales of Channel Master products by "doing business at home by phone calls and mail, and going out at times to solicit sales." *Id.* at 516. Further, "[h]is office coincide[d] with his family bedroom at home where he ha[d] a typewriter and an adding machine, but no company records or files, no stock in trade, no displays, no samples, and no showroom;" "he conducted no demonstrations of the products." *Id.* The Seventh Circuit concluded that these circumstances did not give rise to a regular and established place of business for Channel Master in the Northern District of Illinois.

In comparing these facts to Cordis' business operations, the Federal Circuit noted that

24

"[u]nlike Cordis' representatives who continually maintain a stock of its products within the district, the sales representative in *Channel-Master* kept no stock or samples of the products." *Cordis*, 769 F.2d at 737. Moreover, while Channel Master's sales representative "conducted seminars with distributors to promote his employer's products, there was no evidence to demonstrate that such activities were carried on concerning the specific product which was the subject of the infringement action." *Id.* These factual differences supported the District Court's conclusion that Cordis had a regular and established place of business in the judicial district, whereas Channel Master did not.

But in holding that no fixed physical presence in the sense of a formal office or store is required, *Cordis* should not be understood as eliminating the statutory requirement that a defendant have some regular and established "***place*** of business" in the venue. On its face, the statutory language requires that the defendant at least have a "place" in which it does business in the district – e.g., a place authorized by the defendant where some part of the defendant's business is done. This requirement of a place was recognized by Judge Wright of this District even before *Cordis*. In *Clopay Corp. v. Newell Cos.*, 527 F. Supp. 733, 740 (D. Del. 1981), Judge Wright construed § 1400(b) as requiring that "a defendant must be 'regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control'" (quoting *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178, 180 (S.D.N.Y. 1960)).

Consistent with what Judge Wright had already determined before *Cordis*, the Court understands *Cordis* to mean that while no fixed space in the sense of a formal office or store is necessary, some ***physical*** presence is nevertheless required. *Cordis*' analysis focused on the

defendant's **physical** presence in the district, considering not just whether Cordis had a brick-and-mortar location in Minnesota but also whether Cordis had employees, products, and product literature there. *See Cordis*, 769 F.2d at 735. *Cordis'* explanation that there needs to be a "permanent and continuous presence" in a district further confirms that the corporate defendant is required to have some sort of meaningful physical manifestation in the district. But as *Cordis* also demonstrates, this inquiry is factually driven and dependent on the circumstances of the case. *See also Clopay*, 527 F. Supp. at 740 ("No single factor is controlling in such an evaluation.").

Additional data points are discernable in other cases.[15] This additional guidance is principally in the form of examples of business activities that are **not**, in and of themselves, sufficient to amount to a regular and established place of business, or to a permanent and continuous presence.

First, simply doing business in a district or being registered to do business in a district is insufficient, without more, to make that district a regular and established place of business for any particular entity. *See, e.g., Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1320 (5th Cir. 1971); *Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 624-25 (7th Cir. 1965); *LoganTree*

---

[15]The parties have cited two Supreme Court decisions relating to § 1400(b), but both are so factually distinct from the facts involved here that these opinions, unfortunately, provide the Court little assistance in resolving the instant dispute. *See Schnell*, 365 U.S. at 260 (affirming dismissal of manufacturer for improper venue, as manufacturer's defense of its customer – in a venue where that customer resided – did not make venue proper for non-resident manufacturer); *W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723, 725 (1915) (finding manufacturer, whose plant and home office were in St. Louis, lacked regular and established place of business in New York, as its New York conduct consisted solely of paying a single part-time salesman who solicited orders and forwarded them to St. Louis, paying a portion of rent on a room for the salesman, paying a portion of wages for a stenographer to support salesman, and shipping goods for one sale to a purchaser in New York).

*LP v. Garmin Int'l, Inc.*, 2017 WL 2842870, at *1 (W.D. Tex. June 22, 2017). This is clear from *TC Heartland*, 137 S. Ct. at 1519, which described *Fourco* as holding that § 1400(b)'s use of the word "resides" "negat[es] any intention to make corporations suable, in patent infringement cases, where they are merely doing business" (internal quotation marks omitted). Moreover, until 1988, the general venue statute, 28 U.S.C. § 1391(c), made venue proper in a non-patent case in any district where a corporate defendant was merely "doing business," yet Congress adopted § 1400(b) to specifically and exclusively govern venue in patent cases and did not include "doing business" in § 1400(b) as a basis for venue in patent cases. *See TC Heartland*, 137 S. Ct. at 1518-19; *Fourco*, 353 U.S. at 228.

Second, simply demonstrating that a business entity has sufficient "minimum contacts" with a district for purposes of personal jurisdiction does not necessarily mean that the entity has a regular and established place of business in the district. *See LoganTree*, 2017 WL 2842870, at *1; *IP Co. v. Tropos Networks, Inc.*, 2012 WL 12906154, at *2 (N.D. Ga. Oct. 5, 2012); *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1249 (S.D. Ala. 2006); *IPCO Hosp. Supply Corp. v. Les Fils D'Auguste Maillefer S.A.*, 446 F. Supp. 206, 208 (S.D.N.Y. 1978). A defendant may have sufficient minimum contacts with a state such that exercising jurisdiction over such defendant comports with due process without that defendant doing any regular business in the district, let alone doing business resulting in the type of continuous and permanent presence required to satisfy § 1400(b).

Further, maintaining a website that allows consumers to purchase a defendant's goods or products within the district does not, by itself, demonstrate that the defendant has a regular and established place of business in the district. *See, e.g.*, *Nike, Inc. v. Skechers U.S.A., Inc.*, 2017

27

WL 3389022, at *2 (D. Or. June 30, 2017); *LoganTree*, 2017 WL 2842870, at *2. A website,

which by its very nature can generally be accessed anywhere at anytime by anyone, cannot alone

constitute the type of continuous and permanent presence in the district required by § 1400(b).

To hold otherwise would essentially turn any cell phone, laptop, or computer into a regular and

established place of business for any company with a website from which a consumer can access

information or purchase products online. *Cf. CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

1066, 1075-76 (9th Cir. 2011) ("If the maintenance of an interactive website were sufficient to

support general jurisdiction in every forum in which users interacted with the website, 'the

eventual demise of all restrictions on the personal jurisdiction of state courts' would be the

inevitable result."); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C.

Cir. 2000) ("GTE's theory of jurisdiction rests on the claim that . . . mere accessibility of the

defendants' websites establishes the necessary 'minimum contacts' with this forum. . . . [U]nder

this view, personal jurisdiction in Internet-related cases would almost always be found in any

forum in the country. We do not believe that the advent of advanced technology, say, as with the

Internet, should vitiate long-held and inviolate principles of federal court jurisdiction."); *McNeil

v. Bahamasair Holdings Ltd.*, 2006 WL 1699487, at *5 (W.D. Pa. June 20, 2006) ("To hold that

the possibility of ordering products from a website establishes general jurisdiction would

effectively hold that any corporation with such a website is subject to general jurisdiction in

every state."); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 460 (S.D.N.Y.

2000) ("The guiding principle is that the creation of a website . . . should not permit suit in every

judicial district in the United States."). It is self-evident that a website operable by others

unaffiliated with the defendant is not the type of "place" contemplated by Judge Wright in

*Clopay*, as a website is not "a physical location over which [the defendant] exercises some measure of control." 527 F. Supp. at 740.

Finally, a regular and established place of business does not arise solely from a defendant simply shipping goods into a district – whether to an individual or for distribution by third parties. *See Simpson*, 2017 WL 3616764, at *3 ("[W]hile Plaintiff's Amended Complaint contains allegations supporting the conclusion that Defendant conducts some business in . . . North Carolina by selling products in and shipping products to North Carolina, Plaintiff's allegations fall far short of permitting the inference that Defendant maintains a 'permanent and continuous presence' in North Carolina."); *OptoLum*, 2017 WL 3130642, at *6 (concluding that defendant did not have regular and established place of business in Arizona although it sold infringing products at Home Depot stores there). Just as maintaining a website that allows a consumer anywhere to purchase a defendant's goods is not sufficient for venue purposes under § 1400(b), neither is shipping a product that such a consumer ordered (over the internet, for instance) sufficient. *See, e.g.*, *Nike*, 2017 WL 3389022, at *2 (finding that "direct internet sales is unlikely to lead to relevant evidence on whether Defendant has a 'regular and established place of business' in Oregon").

This last conclusion is further supported by longstanding precedent that "maintaining an exclusive distributorship" or "establishing and maintaining some control over a chain of exclusive, independent distributors" within a forum does not create a regular and established place of business. *See Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 531 F.2d 1382, 1387 (7th Cir. 1976). It follows, then, that sending products for distribution within a district, without more, also fails to establish a continuous and permanent presence there. *See LoganTree*, 2017 WL

29

2842870, at *2.

Pulling all of this together, the Court will proceed to analyze whether a defendant has a regular and established place of business in Delaware in the following manner. Based on both the statutory language of § 1400(b) and *Cordis*, 729 F.2d at 737, the Court must determine whether a defendant has a regular and established place of business by conducting a fact-intensive inquiry focused on whether the defendant does its business in this District through a permanent and continuous presence here. It is clear from *Cordis* that a "fixed physical presence" in the sense of a "formal office or store" is not required, although some physical presence is needed. If all that is revealed by the record is that the defendant is registered to do business here, or only maintains a website that is accessible in Delaware, or simply ships goods to unaffiliated individuals or third-party entities here, then this District is an improper venue for the lawsuit.

### 2. Application

Based on the record, the Court determines that Defendants have met their burden to demonstrate that venue is improper in this District. CGI appears to have no presence in Delaware whatsoever, let alone a permanent and continuous one. Defendants' sworn declarations indicate that CGI has no physical facilities or corporate offices in Delaware. (D.I. 284 Ex. 1 at ¶ 4) Moreover, CGI has no employees based in Delaware. (*Id.*)

Cook Medical has a few contacts with Delaware, none of which, even when considered in the aggregate, amounts to a regular and established place of business. Cook Medical's contacts with Delaware consist of: (1) sales of medical devices throughout the United States, including in the District of Delaware (D.I. 284 Ex. 1 at ¶ 2); (2) sales representatives who "occasionally call on physicians and hospitals (or their respective buyers) in Delaware" but do not live in Delaware

30

(*id.* at ¶ 5); and (3) one sales representative who lived in Delaware between January 2015 and September 2016, but had no responsibility for sales in Delaware and is no longer employed by Cook Medical (D.I. 284 Ex. 2 at ¶ 3).

Cook Medical, like CGI, has no physical facilities or corporate offices in Delaware, and – since September 2016 – has had no employees based in Delaware. (D.I. 284 Ex. 1 at ¶ 4) At most, Cook Medical is "doing business" in Delaware, but – as discussed above – this is not equivalent to having a regular and established place of business here. *See Knapp-Monarch*, 342 F.2d at 625; *cf. Westech*, 2017 WL 3387363, at *3 (holding that three offices in State of Washington, registration in Washington as foreign corporation, and presence of sales representatives there were insufficient to constitute regular and established place of business); *LoganTree*, 2017 WL 2842870, at *2 (finding residents of Kansas who do business with distributors in Texas, have website that allows visitors to access list of Texas-based distributors, and have sales representatives in Texas do not have regular and established place of business in Texas).[16]

In the Court's view, all of this leads to the conclusion that Defendants have met their burden to show that they do not have a regular and established place of business in Delaware.

### C.     Venue-Related Discovery

Plaintiffs do not strenuously contend that the record developed at this point demonstrates that either Cook Medical or CGI has a regular and established place of business in Delaware.

---

[16]Additionally, unlike in *Cordis*, there is no evidence that either Defendants' representatives are regularly (or even occasionally) present when Defendants' medical products are being used to perform medical procedures in the District, nor is there evidence of any inventory of Defendants' products being maintained in this District.

This does not mean, however, that Plaintiffs concede the Court should therefore grant Defendants' motion. Rather, Plaintiffs urge the Court to allow them to take venue-related discovery, "on at least the declarations submitted by Cook." (D.I. 296 at 15) They further contend they "should be allowed to discover the relationship structure between the two defendants – that is, whether they are parent/subsidiary, business affiliates, etc." (*Id.* at 15-16) Plaintiffs suggest that "[d]epending on the nature of the relationship, the infringement acts of Cook Medical [] could be attributed to [CGI]." (*Id.* at 16)

"[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). In the context of jurisdictional discovery, the Third Circuit instructs that "unless a plaintiff's claim is 'clearly frivolous,' jurisdictional discovery should be allowed." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212 (3d Cir. 2013). The law is equally clear, however, that a plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliane Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). To show that discovery is warranted, a party must, at minimum, state a "non-frivolous" basis for venue and do so with "reasonable particularity." *See, e.g., Eastman Chem. Co. v. AlphaPet, Inc.*, 2011 WL 6004079, at *2 (D. Del. Nov. 4, 2011).

Applying this law to the facts in the record here, the Court will deny Plaintiffs' request for discovery. Plaintiffs do not identify any reason to doubt the veracity of Defendants' declarations, which clearly establish that neither Cook Medical nor CGI has a regular and established place of business in Delaware. Accordingly, the proposed discovery appears to be no

more than a fishing expedition.[17]

The Court further finds that allowing venue-related discovery in this case would waste both the parties' and the Court's resources. *See OptoLum*, 2017 WL 3130642, at *6; *Grynberg v. Total Compagnie Francaise Des Petroles*, 2012 WL 4105089, at *4 (D. Del. Sept. 18, 2012) (finding jurisdictional discovery not justified where plaintiffs failed to "allege any fact with reasonable particularity"). The record is already sufficient to demonstrate that Delaware is an improper venue. It is in the interests of the parties, as well as those of the federal judicial system, to transfer this case to an appropriate venue in an expeditious fashion so that it may be concluded on the merits without any undue, unnecessary expense.

In sum, the Court concludes that Defendants have met their burden to show that venue is improper in this District.

## D.     Transfer vs. Dismissal

When a case is filed in an improper venue, a court has the discretion to "dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Here, it is uncontested that the United States District Court for the Southern District of Indiana would be a proper venue for this case. (*See, e.g.*, D.I. 283 at 11) The Court finds that a transfer would serve the interests of justice because it would allow for a timely disposition of this case on the merits. *See In re First Solar, Inc.*, 2013 WL 4051739, at

---

[17]Plaintiffs' request for discovery as it relates to a potential agency theory – whereby Cook Medical's Delaware contacts could be attributed to CGI – is unavailing, as the Court has found that Cook Medical lacks a regular and established place of business in Delaware. At most, then, attributing Cook Medical's actions to CGI could lead the Court to conclude that the "acts of infringement" requirement of the second prong of § 1400(b) is satisfied with respect to CGI, but that would still leave the "regular and established place of business" requirement unfulfilled.

*2 n.3. Thus, the Court will transfer the case to the Southern District of Indiana, Indianapolis Division.

## IV.     CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to transfer (D.I. 282) and will transfer this case to the United States District Court for the Southern District of Indiana, Indianapolis Division. The Court will deny Plaintiffs' request for venue-related discovery. (D.I. 296 at 14-16) An appropriate Order follows.