UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03448-JRS-MJD |
| | ) | |
| COOK GROUP INCORPORATED, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

This matter is before the Court on Plaintiffs' Motion for Leave to Reassert Claim 13 of

U.S. Patent No. 8,974,371 and to Amend Infringement Contentions [Dkt. 376] and Plaintiffs'

Motion for Leave to Amend their Complaint to Assert U.S. Patent No. 9,271,731 against Cook's

Newly-Launched Instinct Plus Device [Dkt. 423].[1]  For the reasons set forth below, the Court

**GRANTS** both motions.  In light of this ruling, Defendants' Motion to Dismiss Plaintiffs' Claim

Based on U.S. Patent No. 8,974,371 for Lack of Jurisdiction [Dkt. 390] is **DENIED AS MOOT**.

In addition, Defendants' Motion to Strike Boston's Notice of Subsequent Events or,

Alternatively, for Leave to File a Response to the Notice [Dkt. 437] is **DENIED AS MOOT**,

inasmuch as the Court has not considered the Plaintiffs' "Notice of Subsequent Events" in

making the instant ruling.

---

[1] The Court notes that several of Plaintiffs' filings relating to the instant motions fail to comply
with Local Rule 5-6 (a), which requires each electronically filed exhibit to be "given a title which
describes its content."  Plaintiffs shall take care to comply with this requirement in the future.

## I.  Background

This case originally was filed on October 27, 2015, in the District of Delaware.  Plaintiffs alleged in their initial complaint that Defendants' products, including but not limited to their Instinct Endoscopic Hemoclip ("Instinct"), infringed upon three of Plaintiffs' patents:  U.S. Patent No. 8,685,048 ("the '048 Patent"), U.S. Patent No. 709,027 ("the '027 Patent"), and U.S. Patent No. 8,974,371 ("the '371 Patent").  On March 9, 2016, Plaintiffs filed an Amended and Supplemental Complaint, [Dkt. 19], which alleged that Defendants' products also infringed upon U.S. Patent No. 9,271,731 ("the '731 Patent").

While the case was pending in Delaware, the claim construction process was completed and the court construed a total of ten terms or term sets.  *See* [Dkt. 80, Dkt. 193], *adopted in* [Dkt. 313].  The Delaware court also ordered Plaintiffs to reduce the number of claims they were asserting from fifty to sixteen, which they did on May 19, 2017.  [Dkt. 251.]

Also while the case was pending in Delaware, Defendants submitted seven petitions for *inter partes* review ("IPR") to the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") in which they sought to invalidate, *inter alia*, all of the claims that had been asserted in this case at the time.  In three orders issued in May 2017, the PTAB instituted IPR proceedings on (1) claims 1-3 and 7-12 of the '027 patent; (2) claims 1-19 of the '027 patent; (3) claims 1, 3, 5-14, and 29-30 of the '048 patent; and (4) claims 1, 3-5, 7, 10-11, 13-15, and 17 of the '371 patent.  In June 2017, the PTAB also instituted IPR proceedings on all of the then-asserted claims in the '731 patent.  *See* [Dkt. 304] (summarizing proceedings instituted by PTAB).  At that time, then, fourteen of the sixteen claims that were then being asserted by Plaintiffs in this case (as well as numerous other claims) were under review by the PTAB.  In

light of that fact, the Delaware court granted Defendants' motion to stay this case until the PTAB resolved the IPR proceedings.  *Id.*

On October 2, 2017, on Defendants' motion, the case was transferred to this district.  In light of the stay entered by the Delaware court, this Court directed that the case be administratively closed.  [Dkt. 339.]  The case remained closed until February 17, 2021, when the IPR proceedings and subsequent appeals to the Federal Circuit had been resolved.  [Dkt. 361.]

As a result of the IPR proceedings, twelve of the sixteen asserted claims were held to be unpatentable.  As a result, pursuant to the parties' stipulation, the Court has dismissed two of the four counts asserted in the Amended and Supplemental Complaint, as well as the Counterclaims related to those counts.  Count II, which relates to the '027 Patent, and related Counterclaims were dismissed with prejudice, and Count IV, which relates to the '731 Patent, and related Counterclaims were dismissed without prejudice.  [Dkt. 389.]

## II.  Discussion

Following the IPR proceedings and the parties' subsequent stipulation of dismissal, Counts I and III of the Amended and Supplemental Complaint remained pending.  Count I relates to the '048 Patent.  Because the four claims that were asserted by Plaintiffs in May 2017 that survived the IPR proceedings were claims 3, 4, 7, and 14 of the '048 Patent, there is no dispute that Count I (and related Counterclaims) remain at issue with regard to those claims.  As discussed below, the parties disagree with regard to the fate of Count III, which relates to the '371 Patent.  In addition, also as discussed below, Plaintiff wish to amend their complaint to assert various new claims.

3

### A.  *Motion to Reassert Claim 13 of the '371 Patent [Dkt. 376]*

Claim 13 of the '371 Patent ("Claim 13") was included in the initial group of fifty claims asserted by Plaintiffs in this case.  Both parties served infringement and invalidity contentions as to all fifty of the asserted claims.  Those fifty claims remained asserted throughout claim construction proceedings[2] and the close of fact discovery, and Defendants challenged all fifty of the asserted claims in their petitions for IPR review.  However, Claim 13 did not make the cut when, on Defendants' motion, the Delaware court required Plaintiffs to reduce the number of asserted claims to sixteen.[3]

The PATB found that Defendants failed to demonstrate that Claim 13 was unpatentable as either anticipated or obvious.  The Federal Circuit affirmed that ruling.  *Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, 809 F. App'x 977, 978 (Fed. Cir. 2020).  Plaintiffs now seek leave to bring Claim 13 back into this case, thus avoiding the dismissal of Count III.

---

[2] Defendants assert that Plaintiffs

> incorrectly state[] that the Court previously "conducted claim construction on claim 13."  (ECF No. 377 at 5).  While the parties asked the Court to construe certain elements of independent claim 11, neither party asked the Court to construe the elements of claim 13, in particular.  (*See, e.g.*, ECF No. 57 at 2 (requesting construction of terms found in various claims of the Durgin '371 patent, but not claim 13)).

[Dkt. 398 at 23] n.4.]  However, the salient point is that, because Claim 13 was still in the case throughout the claim construction process, the parties had the opportunity (and motivation) to seek any necessary claim construction as to Claim 13.

[3] Claim 11, from which Claim 13 depends, did make the cut.  Claim 11 contains all of the elements of Claim 13 except one.  The PTAB's ruling left both Claim 11 and Claim 13 intact. The Federal Circuit reversed as to Claim 11, holding that Claim 11 was anticipated by prior art. Defendants had argued that Claim 13 was anticipated by different prior art than Claim 11 was. The Federal Circuit affirmed the PTAB's finding that it was not anticipated by that prior art. *Cook Grp. Inc.*, 809 F. App'x at 982.

*1. Applicable Standard*

The parties disagree with regard to what standard the Court should apply to Plaintiffs' motion to reassert.  Plaintiffs argue that the correct standard is good cause:

> When a patent owner has been required by the district court to limit the number of asserted patent claims for administrative concerns, e.g., to keep the case at a manageable size, the law permits reassertion of claims when there is good cause: "To avoid unfair prejudice after requiring the plaintiff to limit its claims, a district court must provide the plaintiff with the opportunity to assert additional, unselected claims that present unique issues of liability or damages."

[Dkt. 377 at 6] (quoting *Certusview Techs., LLC v. S&N Locating Servs., LLC*, 2014 WL 4930803, at *4 (E.D. Va. Oct. 1, 2014) (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312-13 (Fed. Cir. 2011)).  Defendants, on the other hand, take the position that Plaintiffs' motion is subject to the more rigorous standard applicable to motions to reconsider.

Defendants' argument that Plaintiffs' motion should be treated as a motion to reconsider is without merit.  Plaintiffs are not arguing that the Delaware court's order requiring Plaintiffs to limit their claims to sixteen was wrong when it was decided; indeed, they are not seeking to change that ruling at all.[4]  Rather, Plaintiffs are arguing that, because of the evolution of the case since they made their claim selection—namely, the results of the IPR proceedings—they should

---

[4] Defendants argue that "[b]y attempting to add claim 13 back in this case, Boston is seeking to assert a *17th* claim."  [Dkt. 398 at 14.]  That argument ignores the point of the Delaware court's order winnowing the claims to 16, which was to make the resolution of the case—via summary judgment and/or trial—more manageable.  Much of the work in this case (discovery, claim construction, invalidity and infringement contentions) was done when there were fifty asserted claims.  The Delaware court anticipated that the remaining work would be done with up to sixteen asserted claims, which it found to be a manageable number.

now be permitted to amend their choice of claims, so long as they stay within the sixteen claim limit.

"[T]he Federal Circuit has held that a district court may limit the number of patent claims a plaintiff may assert without depriving the plaintiff of due process of law as long as the court provides the plaintiff with the ability to assert additional claims upon a showing of good cause." *Certusview*, 2014 WL 4930803, at *4 (E.D. Va. Oct. 1, 2014) (citing *In re Katz,* 639 F.3d 1312); *see also Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011) (noting that the Federal Circuit held in *Katz* that "limiting a plaintiff patentee to sixty-four claims from a large number of asserted claims was permissible if the district court left open the door for the assertion of additional claims on a showing of need").[5]  While the Delaware court's brief oral order requiring Plaintiffs to reduce the number of asserted claims to sixteen did not expressly state that additional claims could be asserted later upon a showing of good cause, *see* [Dkt. 377-2], fundamental fairness dictates that Plaintiffs should be given that opportunity.  Accordingly, Plaintiffs are entitled to reassert Claim 13 if there is good cause to allow them to do so.

---

[5] Defendants note, correctly, that "*Certusview's* statement that 'a district court must provide the plaintiff with the opportunity to assert additional, unselected claims that present unique issues of liability or damages' is premised on *Katz*," and argue that "*Katz* never made such a holding," and "[i]n any event, this statement is dicta, and is not controlling here."  [Dkt. 398 at 27] n.6.] However, as quoted above, the Federal Circuit itself endorsed that reading of *Katz* in *Stamps.com*.  Defendants seem to have lost sight of the fact that removing cognizable claims from a case for case management purposes, while permissible, does implicate a plaintiff's due process rights, and that leaving open the opportunity of asserting additional claims upon a showing of good cause (or "need") is necessary to balance those rights against the practical realities of litigating a patent case.  *See, e.g., Masimo Corp. v. Philips Elecs. N. Am. Corp*., 918 F. Supp. 2d 277, 284 (D. Del. 2013) ("[S]ignificant to the *In re Katz* and *Stamps.com* decisions were the safety valve provisions of the lower courts, which did not make the limitation on the number of claims immutable.").

*2. Diligence*

Generally, the "good cause" standard primarily considers the diligence of the moving party, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021) (citations omitted) (applying "good cause" in the motion to amend pleadings context), and the parties agree that the Court must consider Plaintiffs' diligence in this case. Plaintiffs point out that, except for the three month period prior to the Delaware court staying the case, Claim 13 has been part of this lawsuit. The IPR proceedings were resolved on January 21, 2021;[6] by the time the case was reopened on February 17, 2021, Plaintiffs had already informed Defendants of their intent to reassert Claim 13 via a February 8, 2021, email. Plaintiffs then filed the instant motion to reassert on March 9, 2021. Thus, they argue they were diligent in seeking to reassert Claim 13.

Defendants disagree. They first note that in the Delaware court's order on the motion to stay [Dkt. 304 at 7], the court noted that if the PTAB found all of the claims asserted in the case (that is, included in the sixteen) that were part of IPR proceedings to be invalid, that would result in the '371 and the '731 patents no longer being in the case. Defendants argue that "[a] diligent party in [Plaintiffs'] position would have attempted to add claim 13 back into the case at that point, because [Plaintiffs were] on notice that if the four asserted claims it selected (claims 1, 3, 10, and 11) were found unpatentable by the U.S. Patent Office, the Durgin '371 patent would be out the case." [Dkt. 398 at 6.] Defendants further argue that, because Plaintiffs did not object to

---

[6] Defendants point out that the IPR proceedings relating to the '371 Patent were completed on April 30, 2020. However, the stay of this matter remained in place until the rest of the IPR proceedings were completed in January, thereby preventing Plaintiffs from moving to amend in 2020.

that order—which was issued by a magistrate judge—they "cannot now argue that it was wrong."  *Id.*  But any objection to the magistrate judge's order would have been to the result—the case being stayed—not to the language pointed to by Defendants.  It would have served no purpose for Plaintiffs to move to lift the stay in order to reassert Claim 13; it was more efficient for all concerned for Plaintiffs to wait until the results of the IPR proceedings were known to determine whether they then had good cause to reassert Claim 13.

Defendants also argue that Plaintiffs' "present attempt to add claim 13 back into the case comes ***over three-and-a-half years*** after [the order staying the case] and is nowhere near diligent," *id.*, but, of course, that ignores the fact that the case was stayed for almost all of that time.  Finally, Defendants argue that Plaintiffs lacked diligence because they chose not to assert Claim 13, which is a "narrower dependent claim" that had "a better chance of surviving the IPR proceedings compared to the broader independent claims, like claim 11," as one of their allotted sixteen claims. *Id.* at 17.  However, that is irrelevant to the question of whether Plaintiffs acted diligently to reassert Claim 13 once they had a reason to do so—that is, once all of the other claims they had asserted for the '371 patent were invalidated in the IPR proceedings.  There is no question that Plaintiffs acted diligently when they moved to reassert Claim 13 less than three weeks after the case was reopened.

  *3. The Results of the IPR Proceedings Constitute Good Cause*

Plaintiffs cite several cases for the proposition that "[g]ood cause for reasserting patent claims exists when the Patent Office vindicates the patentability of claims that had been previously dropped due to court-mandated narrowing." Dkt. 377 at 6 (citing *EMED Techs. Corp. v. Repro-Med Sys., Inc.*,  2018 WL 6440893 (E.D. Tex. Nov. 16, 2018) (finding good cause for plaintiff to assert patent claim after the Patent Office confirmed its validity); *Corel*

*Software, LLC v. Microsoft Corp.*, 2018 WL 5792323 (D. Utah Nov. 5, 2018) (same); *ZiLOG,*

*Inc. v. Quicklogic Corp.*, 2006 WL 563057, at *1-2 (N.D. Cal. Mar. 6, 2006) (same)).[7]

Defendants attempt, unsuccessfully, to distinguish these cases.

*EMED*, 2018 WL 6440893, is highly analogous to this case, in that the plaintiff in that

case was moving to assert a new claim because the claim they had originally asserted had been

invalidated in an IPR proceeding.  Defendants attempt to distinguish *EMED* from this case

because "the patentee moved to amend early in the case, before claim construction and with

'minimal discovery' having taken place, and the Local Patent Rules specifically contemplated

further amendments."  [Dkt. 398 at 20.]  However, the fact that various courts recognize the

propriety of these types of amendments in their local patent rules actually strengthens Plaintiffs'

position, as it demonstrates that the need for such amendments is not an anomaly, but rather is

anticipated by those courts.  Indeed, as noted above, Federal Circuit law requires that such

amendments be permitted upon a showing of need.  Further, while it is true that minimal

discovery and no claim construction had taken place in *EMED* at the time the amendment was

sought, Defendants' reliance on that fact to distinguish the cases ignores the fact that, in this case,

Claim 13 was litigated in the case through the discovery and claim construction phases.  The

---

[7] In addition to arguing that the cases cited by Plaintiffs are distinguishable, Defendants argue that this case is more analogous to *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505 (N.D. Cal. Nov. 15, 2011).  However, *Trans Video* involves a plaintiff who sought to assert a new claim (claim 4)—one that it had never asserted in the case before—four months after the claim construction ruling that prompted the desire to assert the new claim.  Trans Video admitted that it had made a strategic decision not to assert the claim at the outset of the case, because its arguments regarding claim 4 would have been inconsistent with its arguments related to claim 3, which it did assert.  Thus, unlike this case, *Trans Video* did not involve a party who was forced to reduced the number of asserted claims and later sought to reassert a claim it had originally asserted.

same is true of Defendants' attempt to distinguish the diligence of the plaintiff in *ZiLOG*, 2006 WL 563057, another case cited by Plaintiffs.  The fact that *EMED* and *ZiLOG* were in the early stages when amendments were sought was relevant to the good cause inquiry because allowing the proposed amendments would not have required a second round of discovery and claim construction or otherwise unreasonably delayed the resolution of those cases; that is also the case here.

Further, Defendants point to the fact that "unlike here, neither *EMED* nor *ZiLog* involved a request to **reassert** a claim, let alone one that the patentee deliberately dropped from the case in response to a court order that the patentee never objected to."  [Dkt. 398 at 21.]  Again, that fact strengthens, rather than weakens, Plaintiffs' position in this case.  Plaintiffs asserted Claim 13 and Claim 13 was litigated until the Delaware court required Plaintiffs to drastically reduce the number of asserted claims.  Thus, unlike the plaintiffs in *EMED* and *Zilog*, Plaintiffs here are not attempting to interject an entirely new claim into the case.

Finally, Plaintiffs properly cite *Corel*, 2018 WL 5792323, for the principle that the invalidation (or, in that case, cancellation) of claims as a result of IPR proceedings can constitute good cause to permit a plaintiff to change its choice of which claims to assert.  Defendants assert that the *Corel* court's finding that IPR rulings "are best categorized as a litigation development, . . . like claim construction" was "criticized and distinguished" in *Univ. of Va. Patent Found. v. G.E.*, 2019 WL 1993552 (W.D. Va. May 6, 2019).  It is simply not true that the court in that case criticized that general principle.  Rather, the court expressly found it to be "inapposite to the facts of the present case" because, in that case, the IPR proceedings had not provided the plaintiff with any new information about the claims plaintiff wanted to add to the case—claims that the

plaintiff had never asserted in the case, even when they had the ability to assert an unlimited number of claims.  *Id.* at *5.[8]

### 4.  *Strategic Decision*

Defendants next argue that Plaintiffs made a strategic decision to drop Claim 13, and argue that a change in legal strategy does not constitute good cause.  Defendants point to the fact that, in Plaintiffs' Revised Identification Of Asserted Claims, in which they identified the sixteen claims they would pursue, Plaintiffs "expressly acknowledged that [they were] '***unable to continue to assert***' the dropped claims (including claim 13) in this case."  [Dkt. 398 at 9] (quoting [Dkt. 377-3 at 2-3]) (emphasis added by Defendants).  It is unclear what Defendants think the import of that statement is, especially given the context in which it was made.  What Plaintiffs said was:

> BSC has objected to, and continues to object to, the reduction of asserted claims at this point in the litigation.  No final claim construction order has issued, due to Cook's filing objections to nearly all of the claim constructions set forth in the Report and Recommendation of December 22, 2016 and the Report and

---

[8] Defendants also assert that the court in *Corel* did not address Corel's diligence in seeking to amend its infringement contentions to assert new claims.  That is not entirely accurate.  The court was applying its district's local patent rules, which required a plaintiff to limit its final infringement contentions to eight asserted claims, but also provided that

> [a] party may amend its Final Infringement Contentions . . . only by order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties, made no later than fourteen (14) days of the discovery of the basis for amendment.  An example of a circumstance that may support a finding of good cause, absent undue prejudice to the non-moving party, includes a claim construction by the court different from that proposed by the party seeking amendment.

*Corel*, 2018 WL 5792323, at *2.  Corel's desire to assert new claims arose because of the reasoning of PTO panel decisions that were released during the IPR proceedings, and the court found that the fourteen-day deadline was tolled while the case was stayed pending completion of the IPR proceedings.  Because Corel filed its motion to assert the new claims within fourteen days of the lifting of the stay (and actually had earlier sought and been denied leave to so move during the stay), there was no question of diligence.

> Recommendation of April 12, 2017.  The claim construction order and/or other
> orders that may issue in this case may reveal that there are unique factual and legal
> issues with respect to claims that BSC had previously asserted and included in its
> Initial Claim Charts dated April 29, 2017, but that BSC is unable to continue to
> assert in view of the Court order requiring reduction (over BSC's objections).
>
> . . .
>
> Consistent with the Scheduling Order, the Local Rules of this District and the
> Federal Rules of Civil Procedure, BSC reserves the right to amend and/or
> supplement these disclosures (including to amend or supplement the list of
> asserted claims) as additional evidence and information become available, as
> necessary in view of any future claim constructions and other orders of this Court,
> or as otherwise appropriate.

[Dkt. 377-3 at 2-3] (internal citations omitted).  This is entirely consistent with Plaintiffs' current

position.  Plaintiffs' decision to drop Claim 13 was not a strategic choice they made; they were

required to drop seventy percent of their asserted claims, objected to being required to do so, and

reserved the right to amend their choice of asserted claims if the events in the case warranted.

*5.  Prejudice*

Finally, also relevant to the good cause inquiry is whether permitting Plaintiffs to reassert

Claim 13 would prejudice Defendants.  *See Bayer Cropscience AG v. Dow AgroSciences LLC,*

*2012 WL 12904381, at \*3 (D. Del. Feb. 27, 2012)* ("In addition to examining whether the

moving party was diligent, when deciding a motion to amend contentions courts also look at

whether the proposed amendment will prejudice the non-moving party.").

Defendants argue that they and the Court would be prejudiced if Plaintiffs were allowed

to reassert Claim 13.  However, the prejudice pointed to by Defendants is mainly the additional

work it will take to address the '371 Patent, which would be eliminated from the case if Plaintiffs

were denied leave to reassert Claim 13.  *See* [Dkt. 398 at 24] (noting that "if Boston is permitted

to reassert claim 13, the Court and Cook will be prejudiced by having to address two distinct

patents, instead of one, effectively doubling the workload and multiplying costs going forward"). While there is no doubt that permitting Claim 13 to be reasserted will result in additional work for both the parties and the Court—making this case about two patents instead of just one—this is not "prejudice" in this context.  *See Trans Video Electronics*, 278 F.R.D. at 510 n.2 ("Generally, the issue is not whether the defendant would be required to engage in additional work in response to newly amended claims. The question is what incremental prejudice results from the *delay* in asserting those claims (*e.g.,* in ability to complete discovery because of approaching trial date)."); *cf. Glob. Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015) (in context of a motion to permit the untimely assertion of an affirmative defense, "the expense of conducting a suit does not count as prejudice; what they mean by 'prejudice' is a reduction in the plaintiff's ability to meet the defense on the merits—if, say, a witness has died, or documents have been destroyed, during the time between when the defense should have been raised and when it was actually raised"); *Windle v. Indiana*, 2019 WL 6724605, at *4 (S.D. Ind. Dec. 10, 2019) (applying same rule in context of withdrawing admissions); *Hall v. Richwine*, 2006 WL 4835918, at *1 (S.D. Ind. June 29, 2006) (applying same rule in context of amending complaint).

Defendants also argue that adding Claim 13 back into the case would subvert what Defendants characterize as the Delaware court's "goal of simplifying and removing the Durgin '371 patent from this case."  [Dkt. 398 at 23.]  That is a misstatement of the Delaware court's goal in issuing the stay; the goal was to avoid unnecessary work relating to claims that might be eliminated by the IPR process, not to eliminate the '371 Patent from the case and thereby thwart Plaintiffs' ability to protect any rights it may have in that patent.

Defendants, quoting *Capella Photonics, Inc. v. Cisco Sys. Inc.*, 2019 WL 2359096, at *2 (N.D. Cal. June 4, 2019), also argue that they are "'entitled to the certainty and finality which they sought and obtained from the IPR proceedings.'" [Dkt. 398 at 23.] However, this ignores the fact that Claim 13 was part of the IPR proceedings, whereas the claim plaintiff sought to add in *Capella* was not part of the IPR proceedings in that case (and had not been previously asserted in the case). Claim 13 was litigated in and survived the IPR proceedings; it is not "prejudice" for Defendants to have to litigate Claim 13 in this case.

Finally, Defendants argue the following:

> In addition, Boston's failure to diligently assert claim 13 prejudices Cook, because Cook is no longer able to challenge claim 13 in the IPR proceedings. In its IPR petition, Cook asserted three distinct grounds of unpatentability for asserted independent claim 11 (Grounds 1, 6, and 9), and three distinct grounds of unpatentability for dependent claim 13 (Grounds 2, 7, and 9). The U.S. Patent Office considered each of those grounds, and found in its Final Written Decision that Cook had not shown by a preponderance of the evidence that claims 11 or 13 were unpatentable. Because claim 11 was an asserted claim, Cook appealed all three of the U.S. Patent Office's decisions with respect to that claim. On the other hand, because claim 13 was ***not*** an asserted claim, Cook only appealed Ground 9, because it was also relevant to asserted claim 11. In its April 30, 2020 decision, the Federal Circuit reversed the U.S. Patent Office's Final Written Decision with respect to Ground 1 and claim 11, but affirmed the U.S. Patent Office's decision with respect to Ground 9 and claim 13.

> Had Boston attempted to reassert claim 13 earlier, before the Federal Circuit Appeal, Cook could have (and would have) appealed all of the U.S. Patent Office's decisions with respect to that claim. Instead, Boston prejudiced Cook by waiting until after Cook appealed the U.S. Patent Office's decision, when Cook was no longer able to appeal Grounds 2 and 7. Then, after the Federal Circuit issued its decision affirming the U.S. Patent Office concerning Ground 9, Boston prejudiced Cook even further by waiting over ten months, until Cook was no longer able to seek reconsideration or further appeal concerning this ground, before moving for leave to reassert claim 13 here.

[Dkt. 398 at 24-25] (internal citations and quotation marks omitted). However, Defendants clearly had the opportunity to raise all of their arguments on appeal, and, in light of the Federal

Circuit law and other cases discussed above, Defendants should have recognized that Plaintiffs' choice of asserted claims was not immutable, but rather was subject to amendment for good cause. Their choice not to raise certain arguments with regard to Claim 13 in their appeal was a strategic litigation decision; any prejudice resulting from that decision is of Defendants' own making.

*6. Conclusion*

Plaintiffs have demonstrated that there is good cause to permit them to reassert Claim 13 of the '371 Patent in this case. Accordingly, Plaintiffs' Motion for Leave to Reassert Claim 13 of U.S. Patent No. 8,974,371 and to Amend Infringement Contentions [Dkt. 376] is **GRANTED**. Plaintiffs shall file and serve their amended infringement contentions by the deadline set forth in paragraph II(B) of the approved Patent Case Management Order. [Dkt. 374 at 2.]

**B.  Motion to Amend the Complaint [Dkt. 423]**

As alluded to in its title, Plaintiffs' Motion for Leave to Amend their Complaint to Assert U.S. Patent No. 9,271,731 against Cook's Newly-Launched Instinct Plus Device, [Dkt. 423], arises out of a new product—the Instinct Plus—that Defendants have introduced during the pendency of this lawsuit. Plaintiffs seek leave to supplement their complaint to assert claims 5 and 19 of the '731 Patent ("Claims 5 and 19") against the Instinct Plus.[9] Plaintiffs also allege that the Instinct Plus infringes on the same claims of the '048 Patent that they are asserting

---

[9] As noted above, the '731 Patent was dismissed without prejudice by stipulation of the parties because all of the previously asserted claims of that patent were invalidated in the IPR proceedings. *See* [Dkt. 389]. However, Defendants' attempt to invalidate Claims 5 and 19 in the IPR proceedings was unsuccessful. *See Bos. Sci. Scimed, Inc. v. Cook Grp. Inc.*, 809 F. App'x 984, 985 (Fed. Cir. 2020) (affirming PTAB's "finding that Cook failed to demonstrate by a preponderance of the evidence the unpatentability of claims 5 . . . and 19 of the '731 patent").

15

against the original Instinct product (claims 3, 4, 7, and 14), as well as Claim 13 of the '371

Patent (which the Court has now granted them leave to reassert in this case against the

Instinct).[10]

The deadline for moving to amend pleadings was March 30, 2021.  *See* [Dkt. 374].

Because Plaintiffs did not file their motion to amend until June 15, 2021, they must demonstrate

good cause to allow the amendment.[11]  *MAO-MSO Recovery* II, 994 F.3d at 878 ("[Because [the

plaintiffs] filed their motion for leave well after the deadline to amend pleadings had passed, they

must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4).").

---

[10] Defendants suggest that Plaintiffs improperly failed to seek leave with regard to their proposed claims that the Instinct Plus infringes on the '048 Patent and Claim 13 of the '371 Patent. Plaintiffs explained in their opening brief that

> [n]ow that Boston Scientific has confirmed that the Instinct Plus infringes the currently-asserted claims of the '048 patent and claim 13 of the '371 patent . . . (the "Currently-Asserted Claims"), Boston Scientific has amended its infringement contentions and its identification of accused products to include accusations that the Instinct Plus infringes the Currently-Asserted claims. Because this early amendment already fits within the current deadline for amendments to the parties' contentions, Boston Scientific believes that no leave is required to add the Instinct Plus to the case. . . .
>
> If the Court nevertheless believes that leave is necessary to assert the Currently-Asserted Claims against the Instinct Plus, then leave should be granted for the reasons explained below.

[Dkt. 424 at 8.]  The Court agrees with Plaintiffs.  Inasmuch as the '048 and '371 Patents have not been dismissed, and the Amended and Supplemental Complaint in this case, [Dkt. 19], does not limit itself to the original Instinct product, it is appropriate for Plaintiffs to introduce a claim that the Instinct Plus also infringes upon those patents by amending their infringement contentions and accused product identification.  In any event, Plaintiffs have included the allegations in their proposed second amended complaint and, as discussed herein, have demonstrated good cause for the amendment.

[11] While Plaintiffs do not expressly acknowledge this standard in their opening brief, they do address each of the relevant factors.

*1. Diligence*

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Id.* (quoting *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (in turn quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Defendants argue that Plaintiffs were not diligent because they knew of the existence of the Instinct Plus no later than February 23, 2021—the date the Defendants informed them of its existence in an email—which gave them plenty of time to move to amend prior to the March 30, 2021, deadline.

As Plaintiffs point out, however, at the initial pretrial conference held on March 1, 2021, shortly after the case was reopened, they "flagged the possibility that it would accuse the Instinct Plus of infringement once it had obtained a sample from Cook." [Dkt. 424 at 5.] Plaintiffs then promptly requested samples of the Instinct Plus and regulatory files related to it from Defendants, but did not receive them until May 11, 2021. While Defendants argue that there was ample publicly-available information (such as marketing brochures) on which Plaintiffs could have based a decision to amend their complaint prior to the deadline, the Court finds that Plaintiffs' decision to wait to review the actual product samples was prudent and does not display a lack of diligence.[12] Inasmuch as only thirty-five days elapsed between when Plaintiffs

---

[12] Defendants also argue that the fact that Plaintiffs agreed to dismiss the '731 Patent on March 10, 2021, does not "reflect diligence," but rather "reflect[s] abandonment." [Dkt. 436 at 8.] This is disingenuous, inasmuch as Plaintiffs made it clear all along that they would only agree to dismiss the '731 Patent without prejudice, rather than with prejudice, precisely because they might determine that the new Instinct Plus infringed on claims in the '731 patent that survived the IPR proceedings. For example, in an email dated March 4, 2021, Plaintiffs' counsel stated:

received the samples and regulatory information from Defendants and when they filed their motion to amend, the Court finds that Plaintiffs acted diligently.

### 2. *Justice So Requires*

Having determined that Plaintiffs have satisfied Rule 16(b)'s good cause standard, the Court next must determine whether the proposed amendment should be permitted under Rule 15(a)(2), which directs that "[t]he court should freely give leave when justice so requires." Defendants argue that Plaintiffs fail to satisfy the "justice so requires" standard because their proposed amendment would be futile and it would unduly prejudice Defendants and the Court.

With regard to futility, Defendants argue that the subject matter of Claims 5 and 19 already has been found invalid in the IPR proceedings, and thus Claims 5 and 19 must be invalid as well. However, as Plaintiffs point out in their reply brief, this argument appears to be based on an incorrect assertion that two substitute claims proposed by Plaintiffs ("Proposed Substitute Claims 24 and 37") were invalidated in the IPR proceedings. In fact, it appears that the PTAB did not address Proposed Substitute Claims 24 and 37, because it did not find the corresponding original claims (Claims 5 and 19) to be unpatentable, and the motion to substitute was contingent on a finding of unpatentability. In other words, the PTAB only addressed Plaintiffs' motion to substitute as to those claims that were found to be unpatentable; as to those claims, the PTAB

---

Regarding the stipulation of dismissal, BSC will not agree to a stipulation in which the '731 patent is dismissed with prejudice in its entirety. Such a dismissal would be premature, as several claims of the '731 patent survived IPR. In addition, you stated that Cook has or will be releasing a new version of the Instinct clip (i.e., the Instinct Plus), but as the parties discussed during the case management conference, Cook needs to provide supplemental discovery with regard to that clip.

[Dkt. 424-7.]

asked only whether the differences in the proposed substitute claims would save any of the unpatentable original claims.  *See* [Dkt. 345-7 at 63] ("As we find claims 1, 12, and 20 to be unpatentable, we address Patent Owner's Contingent Motion to Amend . . . [which] seeks to replace unpatentable claims 1, 12, and 20 with substitute claims 21, 30, and 38 and thereafter change the dependency of other claims to depend from the new substitute claims.").  Because Claims 5 and 9 were not found to be unpatentable, corresponding Proposed Substitute Claims 24 and 37 were never addressed by the PTAB.

Defendants also argue that "the doctrine of collateral estoppel prohibits Boston from disputing in this case that claims 5 and 19 are invalid."  [Dkt. 436 at 14.]  To the extent that this argument is based on something other than an incorrect reading of the PTAB's decision, the Court finds that it has not been adequately explained in Defendants' brief and therefore Defendants have not demonstrated that the proposed amendment would be futile.[13]

Finally, Defendants argue that the proposed amendment would result in prejudice. However, this argument is based solely on the amount of additional work that would be required to litigate an additional patent which, as discussed, at length, above, is not the type of prejudice that can defeat a motion to amend.  In addition, the ends of judicial economy would not be served by requiring Plaintiffs to assert their claims directed at the Instinct Plus in a separate lawsuit.

*3. Conclusion*

---

[13] The Court's finding with regard to futility herein does not preclude Defendants from raising— and more fully briefing—the same issues in a motion to dismiss the amended complaint or other dispositive motion if they believe that their reading of the PTAB's decision is correct or if they otherwise have a good faith collateral estoppel argument they wish to assert.

For the reasons set forth above, Plaintiffs' Motion for Leave to Amend their Complaint to Assert U.S. Patent No. 9,271,731 against Cook's Newly-Launched Instinct Plus Device, [Dkt. 423] is **GRANTED**.  Plaintiffs shall file their Second Amended and Supplemental Complaint in substantially the same form as found at [Dkt. 424-2] **within three days of the date of this Order**.

### III.  Conclusion

For the reasons set forth above, Plaintiffs' Motion for Leave to Reassert Claim 13 of U.S. Patent No. 8,974,371 and to Amend Infringement Contentions [Dkt. 376] and Plaintiffs' Motion for Leave to Amend their Complaint to Assert U.S. Patent No. 9,271,731 against Cook's Newly-Launched Instinct Plus Device [Dkt. 423] are **GRANTED**.  In light of this ruling, Defendants' Motion to Dismiss Plaintiffs' Claim Based on U.S. Patent No. 8,974,371 for Lack of Jurisdiction [Dkt. 390] is **DENIED AS MOOT**.  In addition, Defendants' Motion to Strike Boston's Notice of Subsequent Events or, Alternatively, for Leave to File a Response to the Notice [Dkt. 437] also is **DENIED AS MOOT**.  Plaintiffs shall serve their Second Amended and Supplemental Complaint in substantially the same form as found at [Dkt. 424-2] **within three days of the date of this Order**.  Plaintiffs shall file and serve their amended infringement contentions by the deadline set forth in paragraph II(B) of the approved Patent Case Management Order.  [Dkt. 374 at 2.].

The Court recognizes that the case management schedule may need to be modified to accommodate any additional work that will be necessitated by the amendments permitted in this Order.  The Court and the parties will discuss the need for any such modification at the August 25, 2021, status conference.  [*See* Dkt. 448.]

SO ORDERED.

20

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Dated:  16 AUG 2021

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.