UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:17-cv-03448-JRS-MJD |
| ) | |
| COOK GROUP INCORPORATED, et al., ) | |
| ) | |
| Defendants. ) | |

### ORDER REGARDING DEFENDANTS' SUPPLEMENTAL
### INVALIDITY CONTENTIONS

This matter is before the Court on Plaintiffs' Motion to Strike Defendants' Supplemental Invalidity Contentions [Dkt. 573] and Defendants' responsive Conditional Motion for Leave to Exceed a Limit of 24 Prior Art References to the Extent the Court Finds (1) That Such a Limit Applied to Cook's December 2021 Invalidity Contentions, and (2) That Cook Exceeded This Limit [Dkt. 582].  For the reasons set forth below, the Court **DENIES** Plaintiffs' motion and **GRANTS** Defendants' motion.

This case originally was filed on October 27, 2015, in the District of Delaware.  On April 24, 2017, that court entered the following oral order:

> With respect to the parties' dispute regarding the reduction of the number of asserted claims and prior art references in this case, addressed at today's discovery dispute teleconference, the Court hereby ORDERS as follows:  (1) By no later than Friday, May 19, 2017, Plaintiffs shall identify no more than 16 claims that they will assert in this case.  (2) By no later than Friday, June 9, in conjunction with their final invalidity contentions, Defendants shall reduce their asserted prior art to no more than 24 references.  The Court's decision is premised in part on its expectation that the parties will further work to reduce the number of asserted claims and prior art references as this case progresses.

*See* [Dkt. 573-1] (hereinafter "the Oral Order"). The instant motions arise out of the fact that Defendants' Supplemental Invalidity Contentions ("SICs"), which were served on December 27, 2021, and filed on December 29, 2021, [Dkt. 547, 548, and 549], contain numbered lists of a total of 39 prior art references.[1] Plaintiffs argue that Defendants have actually undercounted their references, because some of the references "are actually groups of several different devices," [Dkt. 574 at 8]; by Plaintiffs' count, Defendants have listed 46 prior art references in total.

The only thing the parties appear to agree on in their briefs relating to the instant motions is the fact that 39 (and 46) are greater than 24. Indeed, Defendants dispute the first foundational premise of Plaintiffs' motion, arguing that the limit of 24 prior art references in the Oral Order simply did not apply to their 2021 SICs. While Defendants' arguments are not wholly frivolous, the Court disagrees. It is clear that the purpose of the Oral Order was to establish, for the remainder of the case, the quantitative outer limits of both Plaintiffs' asserted claims and Defendants' asserted prior art references. Of course, those limits could be increased if subsequent events made them unreasonable, but that would have to be accomplished by seeking leave of court and making a showing of good cause. *See* [Dkt. 449] (discussing at length, in context of Plaintiffs' asserted claims, the applicability of the good cause standard to amending the Oral Order). Plaintiffs are correct that Defendants should have sought leave prior to filing their SICs if they wished to assert more than 24 prior art references.

---

[1] Defendants' SICs related to the '048 Patent [Dkt. 547] and the '731 Patent [Dkt. 549] contain the same numbered list of 34 prior art references. Their SICs related to the '371 Patent contain a numbered list of 39 prior art references; that list includes the 34 references from the other two lists and five additional references.

However, Defendants argue (in the alternative) that they were not required to seek leave because they also dispute the second foundational premise of Plaintiff's motion—that they have asserted more than 24 prior art references. The main thrust of this argument is that ten of the prior art references included in their numbered lists should not be counted toward the limit of 24 because they are used only for "background" only.[2] Plaintiffs do not dispute that the ten references are only used for background purposes, arguing instead that some courts "have rejected efforts to exceed the number of prior art references in local rules by characterizing some of the cite [sic] art as 'background.'" [Dkt. 590 at 10.] Actually, the case cited by Plaintiffs did not involve a limit on the **number** of prior art references; rather, it involved the patent local rules' requirement of "detailed disclosure of a party's patent invalidity contentions" which had to be "done with particularity and as to each prior art for each claim limitation." *Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 4097740, at *1 (N.D. Cal. Sept. 17, 2012). The defendants in that case submitted an expert report that cited to prior art references that were not included in the defendants' invalidity contentions. The same is true of the other case cited by Plaintiffs, *Pactiv Corp. v. Multisorb Techs., Inc.*, 2013 WL 2384249, at *2 (N.D. Ill. May 29, 2013). However, Plaintiffs are correct that both courts refused to distinguish between "background" prior art references and prior art references that had to be disclosed under their local rules.

Defendants, on the other hand, cite to two cases[3] which expressly held that prior art references used for "background" did not count toward the court's limit on prior art references.

---

[2] Defendants identify the ten references that are only used to provide background as: (1) Bales '727; (2) Crockard '276; (3) Rose '615; (4) Gourlay '183; (5) Malecki '607; (6) Sugiyama '643; (7) Kimura '909; (8) Kobayashi '667; (9) Shinozuka '147; and (10) El-Mallawany '203.

[3] The third case cited to by Defendants, *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, 2015 WL 7303352, at *2 (E.D. Tex. Aug. 25, 2015), like Plaintiffs' cited cases, did not involve limitations

3

*See British Telecomms. PLC v. IAC/InterActiveCorp*, 2020 WL 3047989, at *6 (D. Del. June 8, 2020),[4] and *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575 at *29-30 (N.D. Cal. Feb. 20, 2015).[5] The Court finds these cases more persuasive, at least in the context of determining whether a prior art reference counts toward a court-imposed limitation. Background references in an expert report can provide useful context to the court in understanding the expert's opinion, but they do not thwart the goal of limiting the scope of litigated issues to a manageable level, because they do not expand the number of prior art references that must be addressed by the plaintiff's expert and, if the case ultimately goes to trial, presented to the jury. Accordingly, the Court agrees with Defendants that the ten references in question—which, again, Plaintiffs do not dispute are properly characterized as being offered as "background"—should not count toward the 24-reference limit.

Of course, 39 (or 46) minus 10 is still greater than 24. Defendants offer various reasons why some of their remaining references should not count toward the limit and why the remaining references do not exceed 24, and Plaintiffs dispute each of those reasons. Reasonable minds could differ regarding how Defendants' references should be counted, and the Court will not

---

on the number of prior art references, but rather the use of previously undisclosed references in expert reports.

[4] Defendants note that this case is from the District of Delaware, which is the district in which the Oral Order was entered, and argue that "the District of Delaware's precedent should control over that of other courts that may take a different approach in counting references." [Dkt. 585 at 14 n.1.] This argument ignores the fact that a district judge's opinion is not binding precedent, even within the same district, and different judges within a district may take diametrically opposed positions on a subject, as is illustrated by the Central District of California's cases involving this issue. *See* footnote 5 below.

[5] *Fujifilm* expressly acknowledged and disagreed with the holding in *Life Techs.*, 2012 WL 4097740, a case out of the same district on which Plaintiffs rely, and cited to other cases from the same district that also reached the same conclusion as *Fujifilm* with regard to prior art references used for "background" or similar purposes.

devote its resources to delving into those reasons, because it is not necessary to do so. Rather, the Court, in its discretion, **GRANTS** Defendants' alternative motion for leave to exceed the 24-reference limit to the extent that they have done so. Just as the Court found good cause to permit Plaintiffs to reassert a claim following the conclusion of the IPR proceedings and to amend their complaint to add additional claims, *see* [Dkt. 449], the Court finds good cause to permit Defendants to tweak their prior art references in light of those changes, even if that might mean that they have exceeded the 24-reference limit. The Court noted in its prior ruling that "removing cognizable claims from a case for case management purposes, while permissible, does implicate a plaintiff's due process rights, and that leaving open the opportunity of asserting additional claims upon a showing of good cause (or 'need') is necessary to balance those rights against the practical realities of litigating a patent case." *Id.* at 6 n.5. The same is true of limiting the number of prior art references.

The Court recognizes that Plaintiffs argue that Defendants "do[] not need more prior art" because, even though Plaintiffs were recently permitted to assert new claims, the overall scope of the case is smaller than it was when the 24-reference limit was imposed by the Delaware court. As Plaintiffs see it,

> [Defendants] told the Delaware court that 25 references was adequate to address 10 claims; clearly, therefore, 24 references is adequate to address seven claims. (ECF No. 201 at 4 ("Given the number of Patents-in-Suit and the differing claim strategies found in the patents, Cook submits that 25 is an appropriate number of prior art references for 10 asserted claims in the four Patents-in-Suit.").) Cook has ample room within the 24-reference limitation, given that most of its prior defenses are subject to estoppel anyway. Cook again focuses only on what is new since the case was stayed, pointing to new pieces of prior art that it claims it learned about after the stay, and ignores what has been dropped. (*See, e.g.*, Opp. at 22-24.) When the subtractions are considered along with the additions, it is clear that the case as a whole has shrunk. Cooks' repeated plea that it can rely on new art and make new arguments is a red herring, because the real issue is whether Cook should be permitted to rely on those new references ***in addition*** to all of the

> references it relied on previously. Because the number of asserted claims has decreased since the Narrowing Order, there is no reason to increase the number of prior art references.
>
> In addition, Cook does not need additional prior art because the added claims do not raise many new issues. As to claim 13 of the '371 patent, Cook already served invalidity contentions on it before the stay, because that claim was one of the original 50 asserted claims. (ECF No. 377 at 1.) Claims 5 and 19 of the '731 patent are similar to claims that had been asserted before the stay except for one claim element relating to an "increased width portion" at an end of the control wire. (ECF No. 424 at 10). These claims do not justify expanding the 24-referenece [sic] limit particularly after Boston Scientific has dropped so many other claims.

[Dkt. 590 at 13-14] (emphasis in original). However, the fact that some claims have been eliminated does not necessarily mean that a proportional number of prior art references are no longer relevant or necessary. Further, as Defendants point out, the extent of the estoppel effect of the IPR proceedings is contested by the parties.[6]

    The salient fact is that the 24-reference limit was by its nature somewhat arbitrary and, just like the limitation on the number of claims asserted by Plaintiffs, always subject to being changed for good cause. See [Dkt. 449] (discussing at length the good cause standard in context of Plaintiffs' asserted claims). Had Defendants moved prior to the December 27, 2021, deadline for leave to assert the list of prior art references it has now asserted, the Court without a doubt would have found good cause and granted that motion, the good cause being Defendants' need to adequately support their defenses in light of the new posture of the case.

    Plaintiffs, however, argue that Defendants' "brazen" failure to seek leave in advance, [Dkt. 574 at 15, 17], was "misconduct," [Dkt. 590 at 14], and "inflict[ed] maximum prejudice"

---

[6] Defendants also note that their SICs are "half the length and significantly narrower in scope than those served in Delaware in 2017," reflecting the narrowing of the case in light of the IPR proceedings. [Dkt. 585 at 7.]

on Plaintiffs because Plaintiffs were forced to file the instant motion to strike while also responding to Defendants' expert report, [Dkt. 574 at 15, 22]. They further argue that Defendants' failure to seek leave "months ago," [Dkt. 590 at 12], demonstrates a lack of diligence that precludes a finding of good cause. However, in order to move "months ago" to expand the permissible number of prior art references, Defendants essentially would have had to have made determinations regarding what prior art to assert months prior to the deadline for doing so—a deadline that was arrived at based on how much time Defendants would reasonably need to complete that task. Thus, while it would have been preferable for Defendants to file a motion for leave enough in advance of the deadline for the motion to be resolved before Defendants' SICs were due—so that if the motion were denied, in whole or in part, the SICs that were filed would have complied with the Court's order—it is unreasonable to suggest that they should have done so months in advance.[7] In addition, Plaintiffs' complaint that they had to prepare and file the instant motion while also addressing other matters in this case rings hollow; given the rather constant activity in this case, that would have been true regardless of when Defendants filed their motion for leave.

      The Oral Order was a pretrial order entered pursuant to Federal Rule of Civil Procedure 16(d) and, as such, it is within the Court's discretion to modify that order. *See Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 578 (7th Cir. 2001) ("'The determination as to whether or

---

[7] The Court notes that Plaintiffs were not particularly diligent in filing the instant motion to strike. The SICs were served on Plaintiffs on December 27, 2021; the instant motion was not filed until January 21, 2022. In addition, the relief sought by Plaintiffs in their motion—that Defendants be ordered to serve a revised expert report by February 1, 2022—was wholly unrealistic, given that it would have left six business days for the motion to be briefed, the Court to issue a ruling, and the revised expert report to be prepared.

7

not parties should be held to pretrial orders is a matter for the discretion of district court judges.'") (quoting *Sadowski v. Bombardier Limited*, 539 F.2d 615, 621 (7th Cir. 1976)). As noted above, the Court would have granted Defendants' motion to modify the 24-reference limit had they filed it prior to serving their SICs, and any prejudice to Plaintiffs that resulted from their failure to do so was minimal. Because the Court finds good cause to permit Defendants to assert the prior art references that are contained in their SICs, the Court **GRANTS** them leave to do so, regardless of whether those references are properly counted as more than 24.

For the reasons set forth above, Plaintiffs' Motion to Strike Defendants' Supplemental Invalidity Contentions [Dkt. 573] is **DENIED** and Defendants' Conditional Motion for Leave to Exceed a Limit of 24 Prior Art References to the Extent the Court Finds (1) That Such a Limit Applied to Cook's December 2021 Invalidity Contentions, and (2) That Cook Exceeded This Limit [Dkt. 582] is **GRANTED**. Neither party is entitled to fees with regard to the instant motions.

SO ORDERED.

Dated: 3 MAR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.