UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION a Delaware Corporation, BOSTON SCIENTIFIC SCIMED, INC. a Minnesota Corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:17-cv-03448-JRS-MJD |
| COOK MEDICAL LLC an Indiana Limited Liability Company, | ) ) ) | |
| Defendant. | ) ) | |

## Order on Various Motions

This is a patent infringement case.  Before the Court are several motions. Defendant, Cook Medical LLC, filed a Motion to Narrow Disputes for Trial, (ECF No. 1013), a Motion for Leave to File a Response to Plaintiffs' Trial Brief, (ECF No. 1031), and a Motion to Preclude Boston Scientific from Making Arguments That Are Inconsistent with the Court's Summary Judgment Ruling ("Motion to Preclude Inconsistent Arguments"), (ECF No. 1033).  Plaintiffs, Boston Scientific Corporation and Boston Scientific SciMed, Inc., filed a Motion to Permit Remote Testimony of Maher, (ECF No. 995), and a Motion to Strike Barry Slowey from Cook's Witness List, (ECF No. 1020).  The Court addresses these motions in turn.

## I.    Motions to Narrow Disputes and Preclude Inconsistent Arguments

In its Motion to Narrow Disputes, Defendant asks the Court to rule on the following three issues: (1) whether Plaintiffs should be allowed to present "dicta" from

the claim construction order to the jury relating to the doctrine of equivalents; (2) whether Plaintiffs may introduce deposition testimony for a witness that is also testifying live at trial; and (3) whether Defendant should be allowed to introduce statements about the history of the case.  The Court addresses each issue in turn. The Motion to Preclude Inconsistent Arguments overlaps with the first issue in the Motion to Narrow Disputes and will therefore be addressed in that section.

## A. The Doctrine of Equivalents

The parties disagree on how to proceed in trial as to infringement of the '048 patent under the doctrine of equivalents. Before resolving these issues, the Court will first clarify the doctrine as it applies to the case.

On December 22, 2016, the District of Delaware (from where this case was transferred) construed the term "sheath" of claim 1 of the '048 patent to mean "one or more components of the delivery device that enclose the control wire."  (ECF No. 80 at 35.)  In doing so, the court rejected (1) Plaintiffs' proposed construction that the sheath only means "one or more components that enclose the control wire" and (2) Defendant's proposed construction that would require a sheath component to "separate from the clip upon release of the control wire."  (*Id.* at 31.)  The court was "not persuaded that the patents require the limitation that no part of the sheath may ever remain with the clip at the target site" but made clear that the sheath must still be a component of the "delivery device."  (*Id.* at 34.)  Thus, based on the construction, for something to be considered a component of the "sheath," it need only meet two requirements: (1) it must be a component of the delivery device and (2) it must enclose

the control wire.  Whether a component is removed from the body or stays behind in the body is therefore *completely irrelevant* for the purposes of determining whether it is part of the sheath (or an equivalent).

On January 31, 2023, this Court issued its ruling on summary judgment.  At issue was whether the Accused Products infringed claim 1 of the '048 patent requiring link arms that move "radially outward at an area of the sheath."  Plaintiffs had asserted that (1) the housing of the Accused Products is part of the sheath and (2) the link arms of the Accused Products move radially outward at an area of the housing, thus satisfying the limitation of claim 1.  Defendant did not dispute that the link arms move radially outward at an area of the housing; instead, it argued that the housing is *not* a sheath component.  While both parties agreed that the Accused Products' housing "enclose[s] the control wire," the Court found that the Accused Products did not *literally* infringe claim 1 of the '048 patent because the housing is *not a component of the delivery device* as required by the claim construction of "sheath."  (*See* ECF No. 962 at 28–30 ("The housing is not a part of the sheath *not* because it remains in the body, but rather, because Plaintiffs have not presented evidence that it is a component of the *delivery device*, as is required by this Court's construction of 'sheath.'").)  However, the Court found that a genuine dispute existed as to infringement under the doctrine of equivalents; this is the only remaining infringement issue for trial.  (*Id.* at 31.)

Under the doctrine of equivalents, "[i]f an asserted claim does not literally read on an accused product, infringement may still occur . . . if there is not a substantial

difference between the limitations of the claim and the accused product." *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).  One way to determine equivalence is through the function-way-result test, wherein the plaintiff would have to show that the allegedly equivalent element in the accused device "'does substantially the same thing in substantially the same way to get substantially the same result' as the claim limitation." *Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) (citation omitted).

In this case, because the Court found that the Accused Products do not literally infringe the limitation requiring link arms that "move radially outward at an area of the sheath," Plaintiffs at trial must show that the housing of the Accused Products is insubstantially different from the claimed "sheath" in order to prove infringement under the doctrine of equivalents.  Plaintiffs ' equivalents theory was discussed at length in the Court's Order on Summary Judgment.  (*See* ECF No. 962 at 31–32.)

Defendant argues that Plaintiffs "steered the Court down the wrong path in arguing that the housing is equivalent to the sheath" because there is no dispute that the Accused Products have a "sheath."  Not so.  The Court is aware that the general "sheath" limitation is itself not in dispute and that the Accused Products have other components (e.g., coil cath, coil spring, and cath attach) which are part of the sheath. But according to Defendant's *own* argument, the reason the "link arms moving radially outward at an area of the sheath" limitation is not met is *only because the housing is not the sheath*.  Importantly, "sheath" is itself a separate claimed element of the invention that, by both parties' proposed constructions, can include *multiple*

components.  (*See* ECF No. 80 at 31 (showing both parties' constructions of "sheath" to include "one or more components").)  Thus, the housing may be equivalent to (i.e., substantially the same as) another sheath component, even if it is not *literally* part of the sheath.  If so, then the limitation requiring link arms that move radially outward at an area of the *sheath* can be met.  *See Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1380 (Fed. Cir. 2006) (cleaned up) ("What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. . . . [E]quivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum.").

Defendant further insists that proceeding under Plaintiffs' theory constitutes "reversible error."  (*See* ECF No. 1062 at 2 (arguing instead that "the issue to be decided by the jury will be whether link arms that move radially outward <u>outside of</u> the sheath (e.g., inside the housing of the Accused Products) are equivalent to the claimed link arms that move radially outward <u>within</u> the sheath").  But the question here is "what 'equivalent' is being identified in the Accused Products?"  For the "link arms moving radially outward at an area of the sheath" limitation, Plaintiffs' alleged equivalent is the housing as an equivalent to the *sheath*, not the link arms.  To be sure, Plaintiffs could have conceded that the housing of the Accused Products is neither sheath, nor a sheath equivalent, and instead argued that the Accused Products' *link arms* are equivalent to the claimed *link arms*, differing from one another only in the *location* in which they move (in sheath vs. not in sheath).  In that

scenario, Defendant's proposed doctrine of equivalents theory (i.e., determining the difference in function between the claimed link arms and the Accused Product link arms) would be the correct path forward.  But that is *not* Plaintiffs' theory.  Instead, Plaintiffs assert that the housing *is*, at the least, an *equivalent* of a sheath component (another claimed element in the invention).  Thus, the equivalent in the Accused Products at issue for trial is *not* the link arms, as Defendant proposes, but the *housing*.  In sum, to find infringement under the doctrine of equivalents, the jury must decide whether the housing is an equivalent of (i.e., substantially the same as) the sheath.  This analysis is consistent with the meaning of the claimed elements. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., Inc.*, 520 U.S. 17, 41 (1997) (noting that the analysis requires "preservation of some meaning for each element in a claim").

Each party is concerned that the other side will argue its position as to infringement under the doctrine of equivalents in a manner inconsistent with the law and with this Court's orders.  The parties' concerns are with (1) arguments relying on claim construction "dicta" to prove the housing is (or is not) a "sheath" equivalent and (2) arguments related to the function of the sheath.

1. <u>Claim Construction "Dicta"</u>

Defendant wishes to preclude Plaintiffs from presenting claim construction "dicta" to the jury to show that a part of the sheath can remain in the body after delivery. (ECF No. 1015 at 6.)  In response, Plaintiffs argue that they only seek to present this rationale because Defendant's noninfringement arguments contradict the Court's

claim construction. (ECF No. 1018 at 6.) For the following reasons, the Court precludes Plaintiffs from presenting "dicta" from the claim construction order to the jury; *however*, Defendant is likewise precluded from arguing, explicitly or implicitly, that the housing of the Instinct and Instinct Plus cannot be an equivalent of a sheath component simply because it remains behind in the body.

As discussed above, the Court has construed "sheath" to mean "one or more components of the delivery device that enclose the control wire"; whether a component remains inside or outside the body therefore has no impact on whether that component is part of the sheath, [1] and the jury should only be presented with the final construction adopted by the Court. (ECF No. 80 at 35; *see Sunny Fresh Foods, Inc. v. Michael Foods, Inc.* 130 F. App'x 459, 464–65 (Fed. Cir. 2005) ("Michael Foods's complaint is that the district court provided the jury with merely the disputed claims and their respective definitions but excluded the dicta in the district court's claim construction order setting forth the reasoning accompanying the actual definitions. This court finds no error in this practice.").) At trial, the jury must determine whether

---

[1] Defendant's assertion that the Court "arrived at its conclusion" regarding infringement by relying on evidence that the housing "remains behind in the body" is misleading. (ECF No. 1023 at 12.) The reasoning from the Court's Order on Summary Judgment that Defendant cites arises in the context of Dr. Nicosia's testimony on what is meant by a delivery device. (*See* ECF No. 30.) There, Plaintiffs had attempted to create a genuine dispute of fact by pointing to Nicosia's "admission" that any component involved in the delivery of the clip was part of the delivery device. Rejecting this argument, the Court emphasized that Nicosia had actually defined a delivery device component as one involved in delivering the *payload*. Relying on *Nicosia's* definition, the Court concluded that his testimony did not create a dispute of fact because the housing, as part of the payload, is not involved in the delivery of itself. (*Id.*) A component of the delivery device *can* remain at a target site; an opposite conclusion would run counter to the construction of "sheath." The Court arrived at its conclusion on summary judgment because Plaintiffs had failed to designate evidence distinguishing the clip of the Accused Products from the delivery device (and consequently failed to show that the housing was a component of said delivery device).

the housing is substantially the same as the sheath.  All the parties have to do is (1) explain the function of the sheath components and (2) show whether the housing functions in substantially the same way (or not).  Defendant is precluded from arguing that the housing cannot be an equivalent because it remains in the body[2]

2.  <u>The Function of the Sheath</u>

Based on Plaintiffs' Pre-Trial Brief, Defendant is concerned Plaintiffs will argue that the sheath only has a single function: to enclose the control wire.  (*See* ECF No. 1007 at 9.)  Defendant contends Plaintiffs are judicially estopped from making such an argument based on the Court's summary judgment and claim construction orders. The Court agrees.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up). "Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process." *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (citation omitted). "Estoppel is an equitable concept, and its application is therefore within the court's sound discretion." *Id.* at 642.

---

[2] Defendant may also not circumvent this Order by arguing that the housing *functions* substantially differently than the claimed sheath because the claimed sheath is *required* to leave the body; this impermissibly contradicts the Court's construction as well.  Plaintiffs may, however, argue that a housing which is not a component of the delivery device is substantially different than the claimed sheath.  (*See* ECF No. 1023 at 11 (explaining Defendant's noninfringement position).)  It will be Plaintiffs' burden to explain why the housing's function is substantially the same as the remaining sheath components, even though it is not part of the delivery device.

At the outset, the Court does not find that a "single-function" equivalents theory contradicts the claim construction of "sheath" simply because the construction requires the sheath to be a part of the "delivery device." Construing a claim term does not necessarily define its *function* for purposes of the doctrine of equivalents, and Defendant's own expert agreed with this assertion.[3] (*See* ECF No. 621-17 at 25 (arguing the sheath has only one function despite knowledge of the Court's claim construction).) Defendant has not pointed to any law to the contrary.

However, judicial estoppel must still apply due to the Court's ruling at the summary judgment stage. There, in finding a genuine dispute of fact as to whether the housing was an equivalent to a sheath component, the Court relied on Plaintiffs' expert report discussing the several functions of the sheath. Plaintiffs' expert, Mr. Leinsing, opined that the sheath has the following three functions: (1) acting as a housing for the control wire, (2) acting as a means for rotating the clip, and (3) acting as a component of the clip release mechanism. (ECF No. 621-4 at 74 (emphasis added).) The Court relied on Leinsing's report in finding a genuine dispute of fact on whether the housing was indeed an equivalent of the sheath; it therefore did not find summary judgment in favor of Defendant. Plaintiffs now attempt to rewrite Leinsing's report. This is not permissible. Plaintiffs argue that Leinsing merely

---

[3] The "delivery device" language from the claim construction comes into play when Defendant's expert, Nicosia, opines why the function of enclosing the control wire *via a delivery device component* is performed in a substantially different "way" compared to enclosing the control wire with a component that is not a part of the delivery device. (ECF No. 621-17 at 25.) Thus, according to Nicosia, the "delivery device" language in the construction is pertinent to the *location* of the sheath component and the *way* it accomplishes its single function, rather than indicating a wholly separate function of the sheath.

opined on three *potential* functions of the sheath in the patent generally, not on the functions of the "claimed sheath" of claims 7 and 14.  (ECF No. 1060 at 4–5.)  But within the section pertaining to infringement under the doctrine of equivalents of claim 1 (from which claims 7 and 14 depend), Leinsing states, "The *claimed sheath* performs the functions of acting as a housing for the control wire, acting as a means by which the clip can be rotated, and acting as a component of the mechanism by which the clip is released."  (ECF No. 621-4 at 74 (emphasis added).)  He then continues to explain how the housing (along with the other sheath components) performs these three functions in substantially the same way.  The Court did not misinterpret Leinsing's report.

Plaintiffs' reliance on Defendant's expert does not save the day.  Specifically, Plaintiffs point to Dr. Nicosia's rebuttal report wherein he stated, "Claim 1 describes just one function of the claimed 'sheath' – 'enclosing the control wire.'  To the extent Mr. Leinsing contends that Cook's Accused Products perform any additional functions, those functions are not relevant to claim 1 because they are unclaimed functions."  (ECF No. 621-17 at 25.)  Thus, Plaintiffs argue their "single-function" theory is supported by the record.  However, the question that must be answered today is whether the Court would have still found a genuine dispute of fact as to infringement of claims 7 and 14 under the doctrine of equivalents had Plaintiffs argued a "single-function" theory at that stage.  The answer is .no.  Nothing in the record would have supported that argument, including and especially Nicosia's report.  Nicosia's report specifically opines that the housing is *not* an equivalent to

10

the sheath because it functions substantially differently from the claimed sheath. The only doctrine of equivalents analysis in the record identifying the housing as a sheath equivalent was Leinsing's report discussing the *three* functions of the sheath.

Accordingly, Plaintiffs are judicially estopped from arguing a "single-function" theory for the claimed sheath.

### B. Deposition Testimony of a Live Witness

At trial, Plaintiffs intend to present the deposition testimony of Michelle Martinez Smith, Defendant's Fed. R. Civ. P. 30(b)(6)-designated witness who will also be testifying live.  Defendant objects to the deposition testimony as inefficient, confusing, and potentially cumulative.

"[T]he decision to admit deposition testimony is within the sound discretion of the district court." *Oostendorp v. Khanna*, 937 F.2d 1177, 1179 (7th Cir. 1991).  Under Fed. R. Civ. P. 32(a)(3), "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6)."  "The pre-trial deposition of a party is in a position different from that of an ordinary witness, and may be introduced as a part of the adversary's substantive proof *irrespective of the fact that the party is available to testify or has testified at the trial*." *Fey v. Walston & Co.*, 493 F.2d 1036, 1046 (7th Cir. 1974) (emphasis added) (citation omitted); *see also* 8A Fed. Prac. & Proc. Civ. (Wright & Miller) § 2145 (3d. ed.) (A court "may not refuse to allow the deposition to be used merely because the party is available to testify in person."); *Estate of Thompson v. Kawasaki Heavy Indus., Ltd.*, 291 F.R.D. 297, 305 (N.D. Iowa 2013)

11

(discussing divided law and the purpose of Rule 32(a)(3)).  However, the Court is within its discretion to expedite trial and exclude repetitious or immaterial matter. *Fey*, 493 F.2d at 1046.  While there is typically a preference for live testimony, district courts have come to different conclusions when deciding whether to preclude deposition testimony under Rule 32(a)(3).  *Compare, e.g.*, *Berry Plastics Corp. v. Intertape Polymer Corp.*, 3:10-cv-00076-RLY-WGH, 2015 WL 7960986, at *2 (S.D. Ind. Dec. 4, 2015) (precluding party from presenting deposition testimony of 30(b)(6) witness that will testify live) *with Parr v. Sunbeam Prods., Inc.*, No. 06–1208, 2009 WL 10682255, at *3 (C.D. Ill. Oct. 5, 2009) (acknowledging preference for live testimony and use of deposition testimony only for impeachment, but nonetheless permitting deposition testimony of live witness under Rule 32(a)(3)).

At this stage, the Court is not persuaded that Plaintiffs should be precluded from using Ms. Smith's deposition testimony.  Ms. Smith is Plaintiffs' adverse witness and is Defendant's 30(b)(6) designee on a number of topics; her testimony thus falls squarely within Rule 32(a)(3).  Additionally, rather than an open-ended trial, both sides have been given twenty hours to present their case.  If Plaintiffs wish to use up some of their time with Ms. Smith's deposition testimony, then they may do so; the Court's preclusion will not expedite a trial where both sides appear keen on using every second of their allotted time and where, to be sure, the Court will not allow one second more.  Further, Defendant has counter designations in Ms. Smith's testimony that it may use when appropriate.  Defendant has also not provided any basis for its conclusory assertion that the testimony might "harass or embarrass Ms. Smith."

(ECF No. 1023 at 14.)  To the extent Plaintiffs elicit live testimony that is cumulative of deposition testimony, Defendant may object at trial.

As to Defendant's request to have Plaintiffs identify which portions of the deposition testimony they plan to use, (ECF No. 1023 at 13), the Court sees no dispute needing resolution.  Plaintiffs have designated specific portions of Ms. Smith's deposition testimony.  (*See* ECF No. 998-1 at 11 –17.)  Defendant has designated its counter designations, and a higher level of specificity from Plaintiffs is not required.

For these reasons, the Court will not categorically and preliminarily preclude Plaintiffs from using Ms. Smith's deposition testimony even though she will testify live at trial.

### C. Evidence of the "History of the Case"

Defendant seeks to introduce evidence of the "history of the case," namely, a summary of the patents and claims that have been asserted against the Accused Products since the start of litigation, and the ultimate resolution of those asserted claims.  Plaintiffs seek a ruling on whether the following "neutral and non-argumentative facts" are admissible to the jury:

1. Over the course of this case, Plaintiffs have accused Cook's Instinct products of infringing four patents: (1) U.S. Patent No. 8,709,027 ("the '027 patent"); (2) U.S. Patent No. 8,974,371 "the '371 patent;" (3) the '048 patent; and (4) the '731 patent.

2. Plaintiffs asserted 17 claims of the '027 patent against Cook.
    a. All of the asserted claims of the '027 patent were found to be invalid.
    b. As a result, the '027 patent is no longer at issue in this case.

3. Plaintiffs asserted 9 claims of the '371 patent against Cook.

    a. Eight of the asserted claims of the '371 patent were found to be invalid.

    b. The other asserted claim of the '371 patent was found not infringed by Cook.

    c. As a result, the '371 patent is no longer at issue in this case.

4. Plaintiffs asserted 5 claims of the '048 patent against Cook.

    a. One of the asserted claims of the '048 patent was found to be invalid.

    b. Another two of the asserted claims of the '048 patent were found not infringed by Cook.

    c. The remaining two asserted claims of the '048 patent (asserted claims 7 and 14) were found not literally infringed by Cook.

    d. Cook maintains that it does not infringe claims 7 and 14 under the doctrine of equivalents, and that each of these claims is also invalid.

5. Plaintiffs asserted 15 claims of the '731 patent against Cook.

    a. Thirteen of the asserted claims of the '731 patent were found to be invalid.

    b. The remaining two claims of the '731 patent (asserted claims 5 and 19) were found to be infringed by Cook.

    c. Cook maintains that claims 5 and 19 of the '731 patent are invalid.

6. Plaintiffs' Resolution series of clips does not use claims 7 or 14 of the '048 patent or claims 5 and 19 of the '731 patent.

7. Plaintiffs have not sold or offered to sell any product that uses claims 7 or 14 of the '048 patent or claims 5 or 19 of the '731 patent.

(ECF No. 1015 at 19–20.)  Plaintiffs object to these facts as irrelevant, prejudicial, and misleading.

On February 2, 2023, the Court granted-in-part and denied-in-part Plaintiffs' Motion in Limine No. 1 seeking exclusion of evidence related to the IPR proceedings. (ECF No. 982 at 1–2.)  The Court held that Defendant could rely on evidence from the IPR proceedings (1) for impeachment purposes and (2) to rebut willful infringement. (*Id.*)  The Court further specified that if Defendant plans to use IPR evidence, it will

14

do so only "generally" without reference to the PTAB's findings and conclusions.  (*Id.*) Defendant seeks clarification of whether the facts above are within the Court's guidelines.

The Court can quickly exclude all facts related to the '027 and '371 patents, as well as unasserted claims of the '048 patent, which are longer part of this case.   The '027 patent, '371 patent, and the unasserted claims in the '048 patent have no bearing whatsoever on whether Defendant willfully infringed the remaining asserted claims in the '048 or '731 patents.  *See, e.g.*, *TecSec, Inc. v. Adobe Inc.*, No. 1:10-cv-115, 2018 WL 11388472, at *6 (E.D. Va. Nov. 21, 2018) (excluding dropped and dismissed patent claims as "irrelevant to Adobe's culpability at the time of the challenged conduct"); *Digit. Reg of Tex., LLC v. Adobe Sys., Inc.*, No. C 12–1971 CW, 2014 WL 4090550, at *10 (N.D. Cal. Aug. 19, 2014) (excluding evidence of dropped claims as "not probative of Adobe's state of mind with respect to its alleged willful of indirect infringement of the separate claims that remain").  Thus, facts 2, 3, 4(a), and 4(b) are inadmissible.

Unlike the '027, '371, and '048 patents, the history of the '731 patent presents a unique story that may in fact be pertinent to willful infringement.  At the outset of this litigation, Plaintiffs had asserted claims 1-4, 6-10, 12-14, and 20 of the '731 patent against the Instinct clip.  (ECF No. 82 at 10.)   All of those claims were invalidated at the IPR, and the Federal Circuit affirmed their invalidity in 2020.  *See Boston Sci. Scimed, Inc. v. Cook Grp. Inc.*, 809 F. App'x 984, 987 (Fed. Cir. 2020).  As a result, Plaintiffs stipulated to dismissal of the '731 patent from the case.  (ECF No. 385.)  In early 2021, Defendant launched the Instinct Plus clip; thereafter, Plaintiffs

reasserted the '731 patent, this time relying on claims 5 and 19 (which were found not invalid at the IPR, and which had not been asserted before in the litigation). Therefore, Defendant argues that the history of the case as to the '731 patent is pertinent to rebut Plaintiffs' claim that Defendant willfully infringed the '731 patent by launching a new infringing product, the Instinct Plus. (*See* ECF No. 1023 at 15– 16.) Specifically, the evidence is relevant to Defendant's state of mind at the time it launched the Instinct Plus, when at that point, it had invalidated all previously asserted claims of the '731 patent. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) (discussing willful infringement and noting that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct"). The Court accepts Defendant's assertion that the history of the '731 patent is probative of willfulness on the '731 claims and finds fact 5 admissible to that extent. Defendant may explain the case history of the now-invalid and unasserted claims of the '731 patent to rebut a charge that it willfully infringed that patent when it launched the Instinct Plus.[4] If Defendant seeks to rely on evidence of the IPR proceedings for any other purpose, it may do so generally (e.g., to suggest that it tried to invalidate the presently-asserted claims against it); it may not introduce any conclusions from the IPRs as to specific claims aside from those of the '731 patent discussed herein. However, if Defendant goes this route, the door will be opened for Plaintiffs to show the results of the IPR proceedings as to the presently asserted

---

[4] Defendant may still not refer to the legal analysis or findings made at the IPR apart from the ultimate conclusions that the asserted '731 claims at the time were found invalid.

claims (i.e., that they were found not invalid).  (*See* ECF No. 1007 at 32.)  Also, the parties should remain mindful that the clock will be running.

At this time, the Court will not rule on whether facts 6 and 7 are admissible. Defendant did not discuss why these facts are relevant, and Plaintiffs did not discuss why they are inadmissible.  The parties should be prepared to discuss their positions on the admissibility of these facts at the pretrial conference scheduled for May 25, 2023.

## II.   Motion for Leave to File a Response to Plaintiffs' Trial Brief

Defendant seeks leave to file a response to Plaintiffs' Trial Brief.  (ECF No. 1031.) That motion is denied.  A trial brief is not the proper method to seek relief from the Court; if Plaintiffs still seek relief (that is not addressed by this Order), they must timely file a proper motion.

The Court will, however, clarify one point of contention: collateral estoppel *is no longer at issue in this case*.  Defendant is under the impression that the Court left an open question of fact for trial as to collateral estoppel.  (*See* ECF No. 1031-1 at 9–10.) Not so.  At the summary judgment stage, the Court held that collateral estoppel was *not applicable* to this case, and therefore, did not preclude Plaintiffs from disputing any arguments presented at trial that claims 5 and 19 of the '731 patent are invalid. (ECF No. 962 at 97–100.)  Defendant now suggests that, while Plaintiffs can so dispute invalidity, they are still collaterally estopped from "asserting infringement" under those claims of the '731 patent.  (ECF No. 1031-1 at 9.)  But, for substantially the same reasons that Plaintiffs can dispute invalidity, they are not collaterally

17

estopped from asserting infringement. Indeed, the Court has already found that claims 5 and 19 of the '731 patent are infringed, subject to a finding of invalidity by the jury. Simply put, collateral estoppel does not apply in this case (whether to dispute invalidity or to assert infringement) because claims 5 and 19 of the '731 patent *were adjudicated* in the prior IPR. *See Ohio Willow Wood Co. v. Alps. South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (emphasis added) ("If the differences between *the unadjudicated patent claims* and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies."); *cf. Kroy IP Holdings, LLC v. Groupon, Inc.*, No. 17-1405, 2022 WL 17403538, at \*4–7 (D. Del. Dec. 2, 2022) (applying collateral estoppel to *unadjudicated*, "newly asserted" claims that were materially identical to previously adjudicated claims). Notwithstanding the fact that *Ohio Willow Wood* is inapposite here, where claims 5 and 19 were in fact adjudicated, if a party is estopped from disputing invalidity, then by consequence, it is estopped from asserting infringement. After all, the controlling language from *Ohio Willow Wood* shows that collateral estoppel in this context arises if the "question of invalidity" is not materially altered, thus estopping a party from bringing a claim of infringement on a materially identical claim. Either way, Defendant's arguments regarding Plaintiffs' ability to assert the claims are not well taken. Lastly, as to the Court's language cited by Defendant from the Court's Order on Summary Judgment in support of a "dispute" remaining for trial, that language was from a footnote noting *in the alternative* that a genuine dispute of fact would exist "[e]ven if collateral

estoppel applied."  (ECF No. 962 at 100 n.9.)  But collateral estoppel does *not* apply here, and it is not an issue remaining for trial.

### III.  Motion to Permit Remote Testimony of Maher

Plaintiffs filed a Motion to Permit the Remote Testimony of Lauren Maher.  (ECF No. 995.)  Defendant does not oppose the remote testimony of Ms. Maher, who is on maternity leave.  The motion is granted to this extent.  Fed. R. Civ. P. 43(a) ("[T]he court may permit testimony in open court by contemporaneous transmission from a different location," "[f]or good cause in compelling circumstances and with appropriate safeguards.").

However, Defendant opposes Plaintiffs' listing of Jim Petrou as an "alternate" witness in the event Ms. Maher is unable to testify due to an emergency.  Mr. Petrou, a witness who has been deposed by the parties, was listed as an alternate to Ms. Maher before the initially scheduled trial in February.  Defendant did not object to his listing as an alternate at that time.  The Court continued the trial for good cause presented by the Defendant, to which the Plaintiff agreed.  Now, Defendant urges it would be "prejudiced" if Mr. Petrou were allowed as an alternate witness, arguing that Ms. Maher has given birth, and there is no longer an "emergency."  (*See* ECF No. 1017.)  That may be so, but Plaintiffs' concern for an alternate is still valid considering Ms. Maher's maternity leave status and the extremely young age of her child.  More important, Defendant has failed to show what "prejudice" exists now that did not exist in February.  The parties have had ample time to prepare for the disclosed witnesses, including Mr. Petrou, who may serve as an alternate witness.  The Court

19

may entertain any reasonable requests for time to prepare for that alternate testimony.

## IV.  Motion to Strike Barry Slowey from Cook's Witness List

Plaintiffs filed a Motion to Strike Barry Slowey from Cook's Witness List.  (ECF No. 1020.)  Despite Defendant timely and fully identifying Mr. Slowey in its Rule 26 disclosure, and there appearing to be no prejudice in allowing his testimony to proceed subject to some limitations (e.g., limited to his 30(b)(6) designation topic and subject matter covered in his 2017 deposition), this case was ready for trial without any mention of Mr. Slowey as an additional witness before Defendant requested an emergency continuance.  The purpose of the continuance was not to allow for a change in the trial as then set to proceed.  In fact, after granting the continuance, the Court issued an order, (ECF No. 992), for the purpose of *narrowing* issues in the case, not for allowing an expansion of issues, in this instance the expansion of the witness list. Further, Defendant has provided no reason why Mr. Slowey should be added at this late date; i.e., after the trial was set to proceed and would have proceeded but for the continuance granted at the eleventh hour.  Still, the Court will withhold ruling on the motion to strike pending brief arguments of the parties at the pretrial conference scheduled for May 25, 2023.

## V.   Conclusion

Defendant's Motions to Narrow Disputes for Trial, (ECF No. 1013), and to Preclude Inconsistent Arguments, (ECF No. 1033), are **granted**.  The Court issues the following rulings:

(1) Plaintiffs are **precluded** from presenting claim construction "dicta" to the jury.  Defendant is **precluded** from arguing, explicitly or implicitly, that the housing of the Accused Products cannot be an equivalent of a sheath component (or a delivery device) because it remains behind in the body.

(2) Plaintiffs are **judicially estopped** from presenting a "single-function" theory as to the sheath.

(3) Plaintiffs are **not precluded** from using Ms. Smith's deposition testimony at trial.

(4) Defendant is **precluded** from introducing evidence of the "history of the case" as discussed in this Order.  However, Defendant may explain the case history of the now-invalid and unasserted claims of the '731 patent to rebut a charge that it willfully infringed that patent when it launched the Instinct Plus.  In all other instances, Defendant may only refer to the IPRs generally, without regard to their findings and conclusions; if Defendant does so, Plaintiffs may present the results of the IPR proceedings as to the presently asserted claims.

Defendant's Motion for Leave to File a Response to Plaintiffs' Trial Brief, (ECF No. 1031), is **denied**.  Additionally, collateral estoppel is no longer at issue in this case.

Plaintiffs' Motion to Permit Remote Testimony of Maher, (ECF No. 995), is **granted**.  Mr. Petrou is permitted as an alternate witness.

The Court reserves ruling on Plaintiffs' Motion to Strike Barry Slowey from Cook's Witness List, (ECF No. 1020), pending the arguments (or agreement of the parties) during the May 25, 2023 pretrial conference.

**SO ORDERED.**

Date: 05/22/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered counsel by CM/ECF.